INTERNATIONAL MERCANTILE MARINE CO. v. SMITH.

(Circuit Court of Appeals, Third Circuit. May 28, 1906.)

No. 22.

1. SHIPPING—ACTION FOR INJURY OF PASSENGER—INSTRUCTIONS.
The charge of a trial court as to the degree of care required from a steamship company for the safety of a passenger considered and approved, in an action for the passenger's injury.

2. SHIPPING—CARRIAGE OF PASSENGERS—PERSONAL INJURIES—QUESTIONS FOR JURY.
Plaintiff, while a passenger on defendant's steamship, complained of the narrowness of his berth, and the steward made a bed for him on a couch, widening it by placing a board under the mattress. This board prevented the insertion of the usual vertical protecting board in front, and during a storm plaintiff was thrown from the couch, owing to the pitching of the vessel, and was injured. *Held*, in an action to recover for such injury, that the questions whether or not defendant was negligent in failing to provide a protecting board, and whether the danger was so obvious that plaintiff was chargeable with contributory negligence, were properly submitted to the jury.
[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, § 551.]

3. EVIDENCE—PERTINENCY—KNOWLEDGE OF PARTY.

On redirect examination of plaintiff as a witness, in an action for personal injury in which the defense of contributory negligence was relied on, a question asking whether plaintiff knew at the time that the conditions out of which the injury arose were dangerous, called for a statement of fact, and not of opinion, and was pertinent and proper.

In Error to the Circuit Court of the United States for the District of New Jersey.

Charles E. Gummere and Henry G. Ward, for plaintiff in error.
A. V. Dawes and John Rellstab, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and LANNING, District Judge.

LANNING, District Judge. The defendant in error, hereinafter called the plaintiff, brought suit against the plaintiff in error, hereinafter called the defendant, to recover damages for personal injuries resulting from the alleged negligence of the defendant. By his declaration the plaintiff, after setting forth the contract by which the defendant agreed to carry him from New York to Antwerp in the defendant's ship Faderland, and to furnish him with proper and reasonably safe sleeping accommodations in a certain stateroom on that ship, avers that:

"The said defendant, not regarding its said promise and agreement, did not furnish plaintiff with proper and reasonably safe sleeping accommodations; but, on the contrary, the said defendant, without advising him of the perils and dangers from the rolling of the ship to which he would be subjected on a couch without its having a protecting board attached to prevent him from being thrown therefrom, made up and furnished plaintiff his berth on a couch without attaching or putting up a protecting board, which were reasonable, usual, and customary means employed, and which was necessary to make said couch reasonably safe for sleeping in, as the said defendant well knew; so that by reason of the negligence, unskillfulness, and carelessness of the defendant, its agents and servants, in not attaching and putting up said protecting board, and in not advising plaintiff of the dangers and perils he was subjected to by not putting up the same, of which perils and dangers plaintiff was wholly unadvised and ignorant, and in furnishing plaintiff with a couch unsafe as aforesaid, the said plaintiff, while sleeping in said couch so made up as aforesaid, without the protecting board, on the 11th day of May, 1904, was thrown from the couch to the floor with great force and violence by the rolling of the ship, by means of which said several premises, both wrists, the right arm and right shoulder of said plaintiff were sprained, and he, the said plaintiff, was then and there in other respects greatly hurt, bruised and wounded," etc.

There was a verdict and judgment for the plaintiff.

The first alleged error that will be considered is based on an exception to the following language in the charge of the trial court:

"The defendant, or its agents, were obliged to exercise the highest degree of care and prudence to see that he (the plaintiff) was transported safely; that is, not that they were insurers of his safety, but the duty was cast upon them to exercise an extraordinarily high degree of care on their part to see that he was not injured."

Many cases might be cited in which the degree of care required of common carriers of passengers is said to be "the highest practicable

care," "the highest degree of diligence reasonably practicable," "the highest care and best precaution known to practical usage and consistent with the mode of transportation adopted," "the highest degree of care, diligence, and skill known to careful, diligent, and skillful persons engaged in such business," etc. In Pennsylvania Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141, Mr. Justice Harlan said:

"The carrier is required, as to passengers, to observe the utmost caution characteristic of very careful, prudent men. He is responsible for injuries received by passengers in the course of their transportation which might have been avoided or guarded against by the exercise upon his part of extraordinary vigilance, aided by the highest skill. And this caution and vigilance must necessarily be extended to all the agencies or means employed by the carrier in the transportation of the passenger."

In 3 Thompson's Law of Negligence, after reviewing many cases, the author, in section 2747, says that a common carrier of passengers "is bound to exercise the highest degree of care to which human skill and foresight can attain, consistent with the carrying on of the business and with the known methods and the present state of the art."

If the language embraced in the exception now under consideration were all that the learned judge used in his charge to the jury concerning the degree of care required of the defendant, it might possibly be deemed too broad. But the charge proceeds as follows:

"The plaintiff has offered evidence going to show that the defendant did not exercise such a degree of care, but that it was negligent, in that it failed to equip his berth with customary appliances and safeguards; that is to say, that it failed in furnishing to the plaintiff appliances that were reasonably fit and proper to prevent the plaintiff from being thrown from his berth and injured by reason of the pitching and rolling of the vessel. It was the duty of the defendant in this respect to use such appliances as are ordinarily used, and as were fit and proper for the purpose of preventing accidents, and, if they failed in that duty, that would constitute negligence on the part of the defendant. 'Negligence,' gentlemen, in genera., is failure to exercise ordinary care, such care as a reasonable man under like circumstances would exercise. Now, did the defendant furnish the plaintiff such a berth, equipped with appliances reasonably necessary to protect him from injury? If the defendant did supply such a berth to the plaintiff, fitted and equipped with safety appliances, as just stated, it complied with the terms of its contract. There is testimony here to show, which is undisputed (although there is a dispute as to how it happened), that a berth was made up for the plaintiff on the settee in the stateroom; but whether it was made up at the request of the plaintiff or of the defendant's servant is disputed. But that there was such a berth made up in the stateroom, and that the plaintiff occupied it for one or two nights, is undisputed, as I remember the testimony. In the matter of testimony, I leave that entirely to you. You must settle what the facts are. If you should find that such a berth was made up for the sleeping accommodation of the plaintiff, on a settee, thus provided, and that it was reasonably fit and safe considering its character, and that it was used by the plaintiff, he cannot recover, unless you should find further that the defendant was not then in the exercise of reasonable care to protect the plaintiff from the danger likely to arise to him in sleeping in an unguarded bed or berth, from the pitching and rolling of the vessel."

The charge on the question concerning the degree of care required of the defendant, taken as a whole, comes clearly within the rule prescribed by the authorities.

The second alleged error is that the trial court should have directed a verdict for the defendant, both on the ground of the want of suf-

ficient evidence of the defendant's negligence, and on the ground of the plaintiff's contributory negligence. The proofs show that, for the first two or three nights after the vessel left New York, the plaintiff slept in a berth provided with a protecting board placed in an upright position along the outer side of the berth. Being a large man, weighing 240 pounds, he informed the steward that his berth was too narrow for him and very uncomfortable. The steward replied that he would make up for him a wider bed on the settee in the same stateroom. This was done. An extra width to the bed thus made was obtained by laying two protecting boards flat on the edge of the settee, under the cushion and the air mattress, in such a way that the boards extended a few inches outside of the edge of the settee, but it was not provided with, and could not be provided with, any protecting board placed in its normal position along the outer side of the bed. The plaintiff says that the second or third night after this provision was made the vessel ran into a storm, and that, in the lurching of the vessel, the air mattress under him rolled backward, and, there being no protecting board in its ordinary position, he was thrown from the settee and injured. He declares he had no knowledge of the manner in which his bed on the settee had been made up, or of the presence or absence of a protecting board, or of the necessity of such a board as a guard against accident. The case shows that a protecting board was used not only with each berth, but ordinarily with each settee when converted into a bed. The reason why a protecting board was not placed in its normal position along the outer side of the settee in this case was because of the absence of grooves in which to fit the protecting board after the settee had been widened in the manner above stated. There is no claim by the defendant that the plaintiff was informed that the widening of the settee would necessarily result in furnishing the plaintiff with a bed any less safe than the berth he had previously occupied. Whether there was negligence on the part of the defendant, and whether the absence of the protecting board created a danger obvious to the plaintiff and one which he assumed when he consented to occupy the settee as his bed, were questions wholly within the domain of fact, and the submission of them to the jury was clearly not erroneous.

The next alleged error, and the last one considered in the defendant's brief, or discussed on the oral argument, is based on the allowance by the trial court of the following question, asked of the plaintiff by his counsel: "Did you know at the time you went to bed on this settee that there was necessity for a protecting board to make it safe for one to sleep in?" The answer was: "No, sir; I did not." The objection to this question was that it called for an expression of opinion by the plaintiff. We do not think so. It called for the statement of a fact bearing on the defense of contributory negligence by the plaintiff, and was asked on redirect examination, after cross-examination on the subject of the absence of the protecting board. There was no error in this respect.

The judgment of the Circuit Court is affirmed, with costs against the defendant.