### THE CITY OF ST. LOUIS.

(District Court, S. D. New York. December, 1916.)

1. SHIPPING ☞164—CARRIAGE OF PASSENGERS—PERSONAL INJURIES—DUTY OF TREATMENT.

In the absence of any statute requiring it, there is no duty resting upon a coastwise vessel to have a physician or surgeon on board for the treatment of passengers who may be injured.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 533; Dec. Dig. ☞164.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. SHIPPING ⊜166(1)—CARRIAGE OF PASSENGERS—TREATMENT OF INJURED PASSENGER.

Libelant, while a passenger on a steamship bound from Savannah to New York, fell from her berth and sprained her ankle. The injury was treated by the steward, as shown by the evidence, by the proper application of standard remedies. *Held,* that there was no negligence on the part of the vessel or its steward which rendered it liable for any ill effects which may have followed the injury.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 538–546, 549; Dec. Dig. ⊜166(1).]

In Admiralty. Suit by Nettie H. Mills against the steamship City of St. Louis. Decree for respondent.

Felt & Elias, of New York City, for libelant.

Barry, Wainwright, Thacher & Symmers, of New York City, for claimant.

NETERER, District Judge. Libelant charges that the steamship City of St. Louis is an American vessel, operated as a common carrier of freight and passengers for hire between the ports of Savannah, in the state of Georgia, and the city of New York; that on the 3d day of September, 1915, she took passage thereon at the port of Savannah for the port of New York, and paid for and was provided second cabin accommodations, and that while the steamship was off the coast of Cape Hatteras, and while libelant was asleep, "the said steamship gave a sudden lurch and tossed said libelant from the berth assigned to her," causing serious injuries, and spraining the ankle of her left foot; and charges that in response to her screams and cries and moans the steward came and treated her for her injuries, and applied lotions, medicines, and other treatment, that he carelessly, negligently, and unskillfully treated her in connection with her injuries, and applied lotions and applications which contained harmful poisons and other dangerous ingredients, and that as the result of such treatment she became sick, sore, and disabled, and still continues, and that she has been damaged.

Claimant admits that libelant became a passenger upon the steamship, but denies that she suffered any injury because of default or negligence on its part, or any of its servants or agents.

The testimony shows that at about 3 o'clock a. m., while the City of St. Louis was off Cape Hatteras, libelant, who was occupying an upper berth in a stateroom as a matter of choice, fell from the berth and sprained her ankle. Her condition was called to the attention of the ship's steward, who treated her injured ankle by washing the foot and ankle in alcohol, and then massaged her instep and applied soap liniment, which he testified had been purchased from a reputable druggist in New York, and which had been frequently used in similar cases without injurious results. A bandage was placed upon the ankle, and later, about 9 o'clock in the morning, the ankle was again examined, the bandage taken off, liniment applied, and a new bandage put on. At this time the foot was not swollen or blistered. Some time during the evening of the same day, upon complaint of libelant, the

steward took off the bandage and found across the top of the instep a place about 2½ inches long and about 2 inches wide that had become blistered in three places. As a remedy for the blister, zinc ointment was applied and a bandage placed upon the ankle. This operation was repeated the next morning. It was shown upon the trial that soap liniment is a standard preparation, and that it is a proper remedy to use in connection with such injuries, as is also zinc ointment, which had been used by the steward.

[1] Libelant contends that, while there is no federal statute requiring a coastwise vessel to have a physician or surgeon on board, it still would be required, under the obligations resting upon it as a common carrier under the common law, to carry a physician, and cites in support of this contention the following quotation from 5 Am. & Eng. Enc. Law, 558:

"The rule may be stated to be that a carrier is bound to exercise the strictest vigilance in receiving a passenger, conveying him to his destination, and setting him down safely."

And the following from Carroll v. Staten Island R. R. Co., 58 N. Y. 128, 17 Am. Rep. 221:

"The gravamen of an action against a carrier of passengers for injuries sustained is the breach of the duty imposed upon him by law to carry safely, so far as human skill and foresight can go, the persons he undertakes to carry."

These authorities have no application to the issue in this case. They clearly refer only to a degree of care as against physical injuries, and do not impose a duty to provide for medical skill in the event injuries are sustained.

[2] The libelant, if she can recover, can recover only upon the ground of negligent conduct on the part of the steward in treating the injured member. The respondent ship was, under the law, required to exercise the utmost diligence and care in maintaining a safe environment for the libelant against the negligent and careless conduct of its servants and agents, and also against the irregular conduct of any other person, from whatever source such irregularities might arise, which might reasonably be anticipated or naturally expected to occur, in view of the surrounding circumstances, taking into consideration the number and character of the persons on board.

No complaint is made, except as to the steward's conduct, other than, as stated, for omission to carry a physician. The testimony does not show that the steward did anything that he should not have done. He acted in a reasonably prudent manner, applied standard remedies, and, so far as disclosure is made by the evidence, did all that a reasonably prudent man could have done under the circumstances. He was not a physician, but he did on behalf of the respondent ship render such first aid as was necessary to any person injured.

The other cases cited do not support libelant's contention. In Compagnie Générale Transatlantique v. Bump, 234 Fed. 52, —— C. C. A. ——, the captain had placed the passenger in a position where she was exposed to injury and under circumstances which made it impossible for her to help herself. In The Kenilworth, 144 Fed. 376, 75 C. C.

A. 314, 4 L. R. A. (N. S.) 49, 7 Ann. Cas. 202, the libelant was a seaman on the vessel, and received a fracture of the leg, and upon recovery it was found that one leg was shorter than the other, and the master was charged for not giving him proper care and attention. The court (144 Fed. at page 378, 75 C. C. A. 316, 4 L. R. A. [N. S.] 49, 7 Ann. Cas. 202), said:

"In considering whether he was or was not * * * careful, we are bound, so far as possible, to put ourselves in his place. He was not required to have the skill or discernment of a surgeon, and the opinion which he formed, if viewed in no clearer light than was afforded * * * to him, does not appear to have been an unreasonable one, and the treatment which he adopted, when considered in connection and conformity with that opinion, was neither negligent nor improper."

The libel is dismissed, and, in view of the fact that the action was prosecuted in forma pauperis, without costs.