THE GREAT NORTHERN.

(Circuit Court of Appeals, Ninth Circuit. July 1, 1918.)

No. 3084.

1. SHIPPING ⊜⟶166(4)—INJURY TO PASSENGER—MANNER—EVIDENCE.
    On steamship passenger's libel for injury from fall in bathroom, evidence *held* to sustain trial court's finding that fall did not result from negligence of vessel, its owner, or servants, but from libelant's loss of balance when vessel lurched as he entered bathroom.

2. ADMIRALTY ⊜⟶118—APPEAL—CONCLUSIVENESS OF FINDING—DEPOSITION.
    In a steamship passenger's libel in admiralty for personal injury from a fall in the bathroom, a finding that there was no faulty construction and that a handhold was then there would be taken as conclusive, where there was but one deposition on the issue, and that was made by appellant.

3. SHIPPING ⊜⟶166(4)—PERSONAL INJURY—NEGLIGENCE—RES IPSA LOQUITUR.
    The presumption of negligence must rest upon the premise that the accident would not have happened, if proper care had been exercised by

a carrier by sea, and cannot rest on the mere fact that a passenger falls and is injured.

4. NEGLIGENCE ☞121(2)—RES IPSA LOQUITUR—PLEADING—APPLICATION.

Where the plaintiff in an action for negligence specifically sets out in full in what the defendant's negligence consisted, the doctrine of res ipsa loquitur has no application.

5. SHIPPING ☞166(1)—PASSENGERS—CARE REQUIRED.

A ship is bound to a high degree of care for the safety of a passenger.

6. SHIPPING ☞166(3)—PASSENGERS—CONTRIBUTORY NEGLIGENCE AND ASSUMPTION OF RISK.

A passenger must exercise reasonable care for his own safety, and where a passenger, falling on bathroom floor, knew that the floor was slippery when wet, and that the ship might lurch, and must have seen what handholds there were, he assumed the obvious risk of using the bath.

7. SHIPPING ☞166(1)—NEGLIGENCE OR INCOMPETENCY OF SHIP SURGEON—LIABILITY—STATUTE.

A steamship is not liable for the negligence or incompetency of its physician, either under the common law or under Act Aug. 2, 1882, § 5 (Comp. St. 1916, § 8002), requiring the carrying of a competent surgeon or medical practitioner, whose services shall be given to passengers needing them.

8. SHIPPING ☞166(1)—EMPLOYMENT OF SHIP SURGEON—STATUTE.

Under Act Aug. 2, 1882, § 5 (Comp. St. 1916, § 8002), requiring passenger vessels to carry a competent surgeon or physician, whose services shall be given to passengers needing them, the owner and master discharge their full duty when, in employing a physician, they inquire as to his fitness and obtain recommendations.

9. SHIPPING ☞166(1)—SHIP'S PHYSICIAN—SELECTION—STATUTE.

Act Aug. 2, 1882, § 5 (Comp. St. 1916, § 8002), requiring passenger vessels to carry a competent surgeon or physician, whose services shall be given to passengers needing them, requires no more than that, in his selection, reasonable care shall be exercised.

10. SHIPPING ☞166(4)—COMPETENCY OF SHIP'S PHYSICIAN—EVIDENCE.

On a libel by steamship passenger for injuries from a fall in a bathroom, evidence *held* not to show the incompetency of the ship's physician and surgeon in treating the passenger.

Appeal from the District Court of the United States for the District of Hawaii; Horace W. Vaughan, Judge.

Libel in admiralty by Clinton J. Hutchins against the American steamship Great Northern, and A. Ahman, master, bailee, and claimant, and the Great Northern Pacific Steamship Company, owner. Decree for libelees, and libelant appeals. Affirmed.

Frederick Milverton, of San Francisco, Cal. (Thompson & Cathcart and George A. Davis, all of Honolulu, T. H., of counsel), for appellant.

Charles H. Carey, James B. Kerr, and Carey & Kerr, all of Portland, Or. (Smith, Warren & Whitney, of Honolulu, T. H., of counsel), for appellees.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The appellant brought his libel in the court below to recover damages for injuries sustained from a fall while he was a passenger on board the steamship Great Northern

on her voyage from San Francisco to Honolulu. The accident occurred while the appellant was taking a shower bath in one of the bathrooms of the steamship. He alleged that the bathroom was negligently constructed, and dangerous and unsuitable for bath purposes; that the base or bottom of the shower bath was a porcelain bowl about two feet or so square, with sides from three to four inches high, with a slight depression in the center and a slope thereto from all directions to the drain in the center of the bowl, and that the sides of the shower bath were constructed of marble slabs, with service pipes for hot and cold water running up one side thereof; that the bowl was slippery and difficult to stand upon, and that there was no provision by means of rails or otherwise for grasping or holding on in case of slipping, nor was there a rubber mat in said bath. The answer denied negligence and faulty construction, and alleged that the bath was well lighted by electric light, and that facilities were provided for holding on, and that the condition of the bath was plainly visible to the appellant, and the appellees alleged contributory negligence.

[1, 2] The evidence in regard to the manner in which the accident occurred consisted of the testimony of the appellant taken before the court, and the testimony of a fellow passenger taken by deposition. The appellant testified that his injury was caused by slipping on the floor of the bathroom, and that, as there was no handhold on the wall, he was unable to avoid falling. The other witness was present, observing the appellant, and waiting for him to enter the shower bath compartment, so that the witness could enter the opposite compartment. He testified that the appellant fell before he entered the bathroom, and while standing upon the tile floor in front thereof, that his fall was not caused by slipping on the floor of the bathroom, but was caused by the rolling of the vessel, which caused him to lose his balance when he started to step into the basin, at which moment the ship lurched. The trial court upon the evidence found that the appellant did not slip on the bottom of the basin, "that he fell when he lost his balance, on account of the vessel lurching when he was about to step into the bathroom, and that his fall was not caused by any negligence of the vessel, or its owners or servants."

In giving credence to the testimony of the fellow passenger in preference to that of the appellant, the court was influenced by the consideration that the former appeared to be disinterested, intelligent, and in every respect worthy of credence, and that the appellant was not a disinterested witness. Although the rule which makes the finding of the trial court in cases of conflicting testimony conclusive upon an appellate court is modified in cases where a portion of the testimony is taken by deposition, we are not convinced, after a careful consideration of the testimony, that the finding of the trial court should be set aside. Nor do we find ground to disturb the finding of the court below on the question of the alleged faulty construction of the bathroom. The court found that there was sufficient equipment to prevent slipping or falling, that the appellant might have grasped the curtain over the entrance, or the rod from which it hung, or the

outer edge of the wall at the entrance, or the handle on the rear wall, which could be reached from the outside, and that it was not negligence not to provide a mat or covering for the bottom of the basin.

There was conflict in the evidence as to whether or not the handhold on the rear wall was there at the time of the accident, or was placed there soon thereafter. The trial court reviewed the evidence, and said: "The evidence that the handhold was there at the time is overwhelming." A portion of the evidence concerning this issue was taken by deposition, and it is contended that for that reason the finding of the court below is not controlling. There was, however, but one deposition on that issue, and that was a deposition for the appellant. We think the finding of the trial court, therefore, should be taken as conclusive. But, irrespective of that consideration, we have examined the testimony, and we find no ground for holding that the facts should have been found otherwise than as they were.

[3, 4] The appellant contends that a presumption of the appellees' negligence arises from the fact of the injury which he received, and he invokes the rule that the occurrence of an accident, which according to the ordinary course of things would not happen if proper care had been exercised, gives rise to a presumption against the carrier. Concededly, under that rule, the presumption of negligence must rest upon the premise that the accident would not have happened, if proper care had been exercised by the carrier. It cannot rest alone upon the mere fact that the passenger falls and is injured. The fact that a passenger, in a bathroom or elsewhere on board ship, falls, creates no presumption of negligence on the part of the ship. The rule of res ipsa loquitur applies only where the cause of the injury is shown to have been under the management or control of the carrier or its servants. In 3 Thompson, Negligence, § 2756, it is said:

"It has been pointed out by an able judge that the presumption which arises in this case does not arise from the mere fact of injury, but from a consideration of the cause of the injury. Thus it was said by Ruggles, J.: 'A passenger's leg is broken while on his passage in the railroad car. This mere fact is no evidence on the part of the carrier until something further be shown. If the witness who swears to the injury testifies also that it was caused by a crush in a collision with another train of cars belonging to the same carriers, the presumption of negligence might arise—not, however, from the fact that the leg was broken, but from the circumstances attending the fact.'"

See, also, Irvine v. Delaware, L. & W. R. Co., 184 Fed. 664, 106 C. C. A. 600; Lee Line Steamers v. Robinson, 218 Fed. 559, 134 C. C. A. 287, L. R. A. 1916C, 358.

Again, the general rule is that, where the plaintiff in an action for negligence specifically sets out in full in what the negligence of the defendant consisted, the doctrine of res ipsa loquitur has no application. Midland Valley R. Co. v. Conner, 217 Fed. 956, 133 C. C. A. 628, and cases there cited; White v. Chicago G. W. R. Co., 246 Fed. 427, 158 C. C. A. 491. "Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the

preponderance is with the plaintiff." Sweeney v. Erving, 228 U. S. 233, 240, 33 Sup. Ct. 416, 418 (57 L. Ed. 815, Ann. Cas. 1914D, 905).

[5, 6] Even upon the appellant's statement of the facts, his own contributory negligence is strongly indicated. While a ship is bound to a high degree of care for the safety of a passenger, the passenger is also required to exercise reasonable care for his own safety. Elder Dempsey Shipping Co. v. Pouppirt, 125 Fed. 732, 60 C. C. A. 500; Savage v. New York N. & H. S. Co., 185 Fed. 778, 107 C. C. A. 648; International Marine Co. v. Smith, 145 Fed. 891, 76 C. C. A. 423; Plant Inv. Co. v. Cook, 85 Fed. 611, 29 C. C. A. 377; Chesapeake & O. Ry. Co. v. Needham, 244 Fed. 146, 156 C. C. A. 574, L. R. A. 1918A, 1169; Van Anda v. Northern Nav. Co., 111 Fed. 765, 49 C. C. A. 596, 55 L. R. A. 544. The appellant was a man 47 years of age. He had been in the plumbing supply business, and had dealt in materials such as that of which the floor of the bathroom was constructed. He must have known, as every one who takes a bath knows, that such enameled ware is smooth, and when wet is slippery. He saw that the floor of the shower bath was wet. He had opportunity to observe, and must have seen, what handholds there were. The whole situation was visible to him, and there were no latent defects. He knew that a ship at sea was likely to lurch. He knew that stationary bathtubs were available for his use. He chose to use the shower bath, and he assumed whatever risk its obvious condition subjected him to.

[7, 8] The appellant filed an amendment to his libel, in which he alleged that it was the duty of the owners and master of the steamship to employ and have on board on said voyage a skillful and competent physician and surgeon, that it was their duty to exercise the highest degree of care to render to the appellant the best possible surgical and medical attention after he was injured, and that in disregard of that duty they knowingly furnished him an unskillful and incompetent physician, who failed and neglected to give him proper care, and exercise proper medical skill and attention. The answer denied that the surgeon was incompetent, or unskillful, or negligent, or that the owners or the master knew that he was unskillful or incompetent. The appellant relies upon the act of August 2, 1882 (22 Stat. 186), which provides that:

"Every steamship or other vessel carrying or bringing emigrant passengers, or passengers other than cabin passengers, exceeding fifty in number, shall carry a duly qualified and competent surgeon or medical practitioner, who shall be rated as such in the ship's articles. * * * And the services of such surgeon or medical practitioner shall be promptly given, in any case of sickness or disease, to any of the passengers, or to any infant or young child of any such passengers, who may need his services."

We pass the appellees' contention that the statute is inapplicable here, in the absence of a showing that the Steamship Company carried emigrant passengers, or passengers other than cabin passengers exceeding 50 in number, and approach the question whether or not, under the statute or the common law, the steamship is liable for the neglect or incompetency of the steamship's physician. In McDonald

v. Massachusetts General Hospital, 120 Mass. 432, 21 Am. Rep. 529, it was held that a corporation established for the maintenance of a public charitable hospital, which has exercised due care in the selection of its agents is not liable for injury to a patient caused by their negligence. The court said:

"If, however, any contract can be inferred from the relation of the parties, it can be only on the part of the corporation that it shall use due and reasonable care in the selection of its agents."

In Laubheim v. De K. N. S. Co., 107 N. Y. 228, 13 N. E. 781, 1 Am. St. Rep. 815, a case which arose after the act of 1882 went into effect, the court said:

"If, by law or by choice, the defendant was bound to provide a surgeon for its ships, its duty to the passengers was to select a reasonably competent man for that office, and it is liable only for a neglect of that duty. * * * It is responsible solely for its own negligence, and not for that of the surgeon employed."

And the court held that if, in the case under consideration, the surgeon had erred in his treatment, it did not prove that he was incompetent, or that it was negligence to appoint him.

In O'Brien v. Cunard Steamship Co., 154 Mass. 272, 28 N. E. 266, 13 L. R. A. 329, the court held that a shipowner who provides a competent physician, whom the passengers may employ if they choose, is not liable for his negligence in the medical treatment of a passenger, either at common law or by the United States statute of August 2, 1882, and said:

"Under this statute it is the duty of shipowners to provide a competent surgeon, whom the passengers may employ, if they choose in the business of healing their wounds and curing their diseases. The law does not put the business of treating sick passengers into the charge of common carriers, and make them responsible for the proper management of it. The work which the physician or surgeon does in such cases is under the control of the passengers themselves. It is their business, not the business of the carrier. * * * The master or owners of the ship cannot interfere in the treatment of the medical officer when he attends a passenger. He is not their servant, engaged in their business, and subject to their control as to his mode of treatment. They do their whole duty if they employ a duly qualified and competent surgeon and medical practitioner, and supply him with all necessary and proper instruments, medicines, and medical comforts, and have him in readiness for such passengers as choose to employ him. This is the whole requirement of the statute of the United States applicable to such cases, and if, by the nature of their undertaking to transport passengers by sea, they are under a liability at the common law to make provision for their passengers in this respect, that liability is no greater."

In Allan v. Steamship Co., 132 N. Y. 91, 30 N. E. 482, 15 L. R. A. 166, 28 Am. St. Rep. 556, a case in which the court was called upon to construe the British Passengers Act of 1855, which required that every passenger ship shall carry a duly qualified medical practitioner, "who shall be rated on the ship's articles," and in other respects is similar to the statute of the United States, the court said:

"When the shipowner has employed a competent physician, duly qualified as required by the law and has placed in his charge a supply of medicine sufficient in quantity and quality for the purposes required, which meet the ap-

proval of the government officials, and has furnished to the physician a proper place in which to keep them, we think it has performed its duty to its passengers. From that time the responsible person is the physician, and errors and mistakes occurring in the use of medicines are not chargeable to the shipowner."

In The Napolitan Prince (D. C.) 134 Fed. 159, a case also involving the British law, it was held that the errors and mistakes or negligence of the ship's physician are not imputable to the ship; it being shown that the ship was not negligent in selecting him.

· In the present case the regulations of the statute were complied with, a surgeon or medical practitioner was employed, who was carried on the ship's articles, and hospital accommodations and medicines were provided. The services of the physician were engaged by the marine superintendent of the steamship, after having made diligent inquiry and relying, also, upon the written recommendations of the assistant general manager of the Oriental Steamship Company, the recommendation of the master of the steamship Honolulan, and upon the certificate of the Medical Society of the State of California, stating that the physician was a regular graduate physician, licensed to practice in that state, "and for some time has been known favorably to this office." We think it clear that the appellees had discharged their full duty when they employed the physician, after taking pains, as they did, to inquire of his antecedents and his fitness.

[9, 10] But it is said that the physician was incompetent, and that the vessel is liable for the failure of the owners and master thereof to comply with the provisions of the statute, which required them to employ a competent physician. We do not think that the statute requires more than that in the selection of a physician reasonable care shall be exercised. We add that in our opinion the evidence fails to show that the physician was in fact incompetent. He found the appellant suffering from a bruised shoulder. He manipulated the bruised arm sufficiently to see that it moved freely in the socket. He refrained from further manipulations for the reason, as he said, that they would cause pain which was unnecessary, in view of the fact that at the conclusion of the voyage two or three days later the appellant would have the opportunity to go to his own physician at Honolulu, where an X-ray picture could be taken, and the precise nature of the injury could be ascertained; and he advised the appellant to have the X-ray picture taken immediately upon his arrival in Honolulu. In the meantime the appellant's arm was held in a sling. If there was error in the treatment, it was a mistake in judgment, and it does not prove incompetency.

The decree is affirmed.