**GAMBLE v. THE NEW BEDFORD.**

No. 1768.

United States District Court
D. Rhode Island.

Feb. 27, 1953.

Harold Semple, East Providence, R. I., for libelant.

Angelo A. Caldarone, Providence, R. I., and Croydon B. Dunham, New York City, for libelees.

LEAHY, District Judge.

This is a suit in admiralty against the Steamship New Bedford and against her owners, Sound Steamship Lines, Inc., a Rhode Island corporation, to recover damages for personal injuries alleged to have been sustained by the libelant, Chester I. Gamble, on August 12, 1950, while he was a passenger on the "New Bedford".

This Court has jurisdiction under the provisions of 28 U.S.C.A. § 1333.

The case was tried without a jury and was submitted to the Court for decision on oral testimony, arguments, and briefs.

The New Bedford is an excursion boat engaged in coastal transportation of passengers for hire on daily trips between Providence, Rhode Island and Block Island, Rhode Island, via Newport, Rhode Island. On August 12, 1950 the libelant purchased a ticket at Providence for a trip to Block Island and return. On the way out from Newport to Block Island the ship stewardess saw the libelant fall down a stairway on the ship and land on the deck. She immediately called for help, and the chief mate and other· crew members responded. They picked up the libelant, who was then unconscious, and placed him in a canvas chair with an adjustable back. The master of the ship was then notified of the accident, and he arrived to find the libelant in the chair, resting on his left side in a semi-reclining position, just recovering consciousness. First aid was being administered to the libelant for a cut on his forehead. The libelant complained about his hip to the master, who then felt libelant's body at the hip but found no fracture. Thereupon the master arranged to have a doctor meet the ship at the place of landing at Block Island.

Upon the arrival of the ship at Block Island, Dr. Lorenzo Orlando came aboard and examined libelant. After the completion of his examination he gave libelant a sedative and directed that he be kept in the position in which he had been placed on the canvas chair. He further directed that the libelant receive hospitalization. Although Dr. Orlando was himself uncertain at the trial as to whether he directed merely hospitalization, or hospitalization at Providence, there was other testimony to the effect that he directed hospitalization at Providence.

Upon the arrival of the ship at Newport at 5:45 p. m., on the return trip from Block Island, the master offered to have the libelant removed to a hospital, but the offer was refused by libelant, who stated that he wished to remain on board until the ship arrived at Providence. When the ship docked at Providence it was met by an ambulance in which the libelant was removed to a hospital, where it was determined that his principal injury consisted of a comminuted fracture of the upper end of the leg bone at the hip joint.

The libel·sets forth two causes of action. In the first cause of action it is alleged that the respondents were negligent in the maintenance of the stairway on which libelant fell, and in the second cause of action it is alleged that the respondents were negligent in fulfilling their duty to the libelant as an injured passenger. At the conclusion of the trial the respondents moved to dismiss the libel on the principal ground that no negligence or failure of duty on the part of the respondents had been shown. The

Court granted this motion to dismiss in respect to the first cause of action, because insufficient evidence had been introduced to support this allegation. The motion to dismiss the second cause of action was denied.

The libelant asserts that at the time of his fall it would have required approximately one-half hour to return to Newport, whereas it required one and one-half hours to reach Block Island. He contends, therefore, that it was the duty of the master, upon learning of libelant's injury, to return the libelant to Newport for medical treatment, instead of proceeding to Block Island He contends further that the resulting delay in securing competent surgical and hospital care prolonged the period of time required for libelant to recover from his injury.

The respondents contend that at the time of libelant's fall the ship was nearer to Block Island than it was to Newport, that in any event it was not unreasonable for the master to proceed to Block Island rather than return to Newport, and that the care and treatment given to the libelant, from the time of his injury to the time when the ship docked in Providence, was adequate and proper, considering the apparent extent of libelant's injury and the facilities available for his treatment and care.

The rights and duties of the parties to this action are those established by the common law. A ship owner has no common law duty to carry a physician or surgeon for the treatment of injured passengers. 80 C.J.S., Shipping, § 186. Furthermore, it is generally established that a vessel is not required to deviate from its course in every instance in order to procure medical assistance for an injured passenger. The Iroquois, 1904, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955. Whether a vessel should or should not deviate from its course depends in every case upon the exercise of reasonable judgment by the master. In the exercise of such judgment the master is required to take into consideration the seriousness of the injury, the care that can be given to the passenger on shipboard, the proximity of the next port as compared with the proximity of the nearest port, the probable consequences of delay to the injured passenger as compared with the consequences to the other passengers and to the ship owner, the likelihood that a competent physician may be found at either port to take charge of the patient, and other similar considerations. The Iroquois, supra.

In the case at bar, from the master's examination of the libelant, and from his observation that libelant was not groaning or complaining of pain, he concluded that libelant's injuries were not serious and that libelant's life was not endangered. We now know that the master was mistaken as to the true nature and extent of the libelant's injury, but the Court is satisfied that the opinion upon which he acted, although erroneous, was honestly entertained by him, and was not unreasonable under the circumstances.

Having formed an opinion that the libelant's injury was not serious, the master was then required to make a reasonable decision as to whether he should return to Newport or proceed on his course to Block Island. There is a conflict in the testimony as to the location of the ship on its course between Newport and Block Island, a two hour run, at the time when the master was required to make this decision. It is apparent, however, that the ship was well on its way to Block Island. It appears reasonable to assume from the testimony that a return to Newport at that time would have required at least forty-five minutes, taking into consideration that after the libelant's fall some time was consumed in administering first aid to the libelant, in ascertaining the probable nature of his injuries, and in determining what further action should be taken to help him, and also taking into consideration that additional time would have been required to reverse the course of the ship.

The ship left Newport at 11:45 a. m. The accident happened at about 12:-16 p. m. If the master had decided to return the ship to Newport it would have arrived there at approximately 1:00 p. m. Medical attention was given to libelant at Block Island at approximately 1:45 p. m.,

one and one-half hours after the accident. Hospitalization was available to him when the ship returned to Newport at 5:45 p. m., approximately four and three-quarters hours later than if the ship had returned to Newport immediately after the accident. Libelant, however, elected to remain aboard until the ship docked at Providence at 7:45 p. m. It thus appears that whatever the respondents' liability with regard to hospitalization may have been in this case, it terminated at 5:45 p. m. Therefore the libelant's suggestion that the delay in hospitalization extended over a period of approximately eight hours is not supported by the evidence. In view of the opinion of the master that the libelant's injury was not serious, that medical attention was available at Block Island, that it would have been possible to secure air transportation back to the mainland in the event that the doctor at Block Island found such transportation advisable, and that inconvenience and delay would have been caused to approximately four hundred other passengers and to the owners of the vessel and its crew by returning to Newport, the Court finds that the master's decision to proceed to Block Island was not unreasonable under the circumstances and did not constitute negligence or any violation of any duty owed to the libelant. See The Kenilworth, 3 Cir., 1906, 144 F. 376, 4 L.R. A.,N.S., 49, certiorari denied 202 U.S. 617, 26 S.Ct. 764, 50 L.Ed. 1173.

▮▮ The libelant has made the further contention that the respondents were negligent in the care and treatment given to the libelant after the accident. The duty of a ship owner to a passenger who is injured during the voyage is to see that his injuries receive such care and treatment as is reasonably practicable in view of the facilities available. The City of St. Louis, D.C.S.D.N.Y.1916, 238 F. 381. The libelant contends that he should have been removed to a bunk on another deck instead of being placed in the canvas chair. But the master was not a physician. The Court cannot say that the master, not knowing the full extent of libelant's injury, acted unreasonably in allowing libelant to remain in the adjustable chair. Furthermore, after Dr. Orlando's examination of the libelant, the master was acting under the doctor's direction in allowing libelant to remain in the position in which he had been placed. The Court is satisfied that at all times after the accident the libelant was maintained in a position which the master reasonably believed was proper under the circumstances. In addition, first aid was administered to the libelant; a foot stool was provided for his comfort; and blankets were supplied to keep him warm. Food was offered to him, but, except for coffee was refused. Somebody attended him during the entire trip after his injury, including a student nurse and two dental assistants. The master visited him several times during the voyage. No objection was expressed by Dr. Orlando, upon his examination of the libelant, as to the care which had been provided for him up to that time. The care and treatment which the master adopted on his own initiative prior to the time of Dr. Orlando's examination, and at the doctor's direction after said examination, appears to have been reasonable under the circumstances. In view of these facts the Court is satisfied that the respondents were not negligent in the care and treatment afforded to the libelant after his injury.

▮ The Courts have generally held that a master fulfills his duty to exercise due care if he follows the advice of a competent physician. The Van Der Duyn, 2 Cir., 1919, 261 F. 887. In the instant case the master followed the advice of Dr. Orlando. The libelant contends, however, that Dr. Orlando was incompetent, and that the master was therefore negligent in the selection of a physician. It appears that Dr. Orlando was engaged in general practice on Block Island. There is nothing before the Court to indicate that the master was unreasonable in his belief that Dr. Orlando was competent to treat the libelant if his injury were not serious, or if serious, to arrange for his transportation to a hospital by way of the ship or by aircraft. Furthermore, Dr. Orlando was the only physician available on Block Island. The Court rejects the contention that he was incompetent and is satisfied that the master

was not negligent in his choice of physician. Having reasonably exercised his judgment in making what in his opinion was a proper selection of a physician, the master would not be responsible for the subsequent negligence, if any, on the part of that physician. The Great Northern, 9 Cir., 1918, 251 F. 826. This would seem to be especially true where, as here, Dr. Orlando was not the ship's physician, but was rather the physician of the libelant, and was in fact paid by him.

While the Court rests its decision on other facts, it may be noted that the libelant expressed no objection at any time during the voyage in respect to the care or treatment which he was receiving, or that he requested any different care or treatment. He did not request to be returned to Newport after his injury, or to be flown back to the mainland from Block Island. On the contrary, he refused to take advantage of the hospital facilities available at Newport, on the return trip from Block Island, and requested to remain aboard until the ship arrived at Providence.

Upon consideration of all the facts of this case the Court finds that the respondents did not violate any duty owed to the libelant as an injured passenger, and that they were not guilty of any negligence.

Judgment shall be entered for the respondents.