[No. 34659. Department Two. February 13, 1959.]

EARL A. WASHBURN, *Appellant,* v. KENNETH W. ENSLEY, *Respondent.*[1]

[1]Reported in 335 P. (2d) 471.

 

*Pebbles & Swanson* and *Velikanje, Velikanje & Moore,* for appellant.

*Summers, Bucey & Howard, Charles B. Howard,* and *Richard W. Buchanan,* for respondent.

DONWORTH, J.—This appeal is from a judgment in favor of respondent, entered upon the verdict of a jury in an action for personal injuries, damage, and loss of personal property and temporary loss of income alleged to have been sustained as a result of respondent's negligence.

The facts, which we think the jury was entitled to find, may be summarized as follows:

On May 29, 1956, respondent was the lessee and master of a fifty-four foot boat called the "Mardo," which he chartered to transport sport fishermen from Westport to fishing grounds in the Pacific ocean and return. Appellant was one of a charter party of seven such persons who left Westport about nine o'clock that morning aboard the "Mardo." Respondent was at the wheel.

After leaving Westport, the "Mardo" crossed the Grays Harbor bar before reaching the open sea. In crossing the bar, the vessel encountered somewhat rough water, but that was not unusual. Beyond the bar, the "Mardo" proceeded southwesterly at about a forty-five-degree angle to the ocean swells. These swells were estimated to average about four feet in height, *i.e.*, eight feet from the bottom of the trough to the top of the swell. The condition of the open sea was described as "moderate," as distinguished from calm, or rough.

About a third of a mile beyond the bar, respondent noticed a swell which appeared to be somewhat larger than the others. When the swell was about a third of a block away, it began to straighten up. Respondent turned into the swell, increasing power in order to hasten his turn, but was

unable to turn sufficiently to meet the wave head on. As a result, the wave struck the boat at an angle of about ten degrees on the starboard bow. Respondent had managed to reduce power just before the wave struck.

The wave in question was a freak wave, variously described as being from fifteen to thirty feet in height, a "mountain," and "at its crest [the wave], was more like a vertical wall of water."

At the time the wave struck the "Mardo," appellant was standing near the stern of the vessel by the trunk cabin. His side was to the wave, and, as he testified:

"So far as I was concerned I was just there shooting the breeze with the two boys and somebody hollered and I happened to look up and I couldn't even see daylight, the water was so high by the ship."

The wave apparently broke just as it struck the "Mardo," washing over the boat completely and striking with such force as to thrust appellant into the stern rail, causing the injuries, and washing overboard some of the property, for which he sought damages.

Although, by his own testimony, respondent had seven to ten seconds in which to act after becoming aware of the danger presented by the freak wave, he did not warn any of his passengers.

In his complaint, appellant alleged that respondent was negligent in eight respects. Appellant's principal contentions were that respondent was negligent in failing to meet the wave head on and in failing to warn appellant of its approach. Respondent denied these averments and interposed affirmative defenses that (1) appellant's injuries were caused by a sudden, freak wave, neither caused nor contributed to by any negligence on respondent's part; (2) appellant's injuries were solely caused or contributed to by his own negligence in failing to exercise the degree of care of an ordinarily prudent person under the same or similar circumstances.

At the conclusion of the evidence, the trial court instructed the jury upon the definition, elements, and effect of

negligence and contributory negligence, and submitted instructions upon the defense theories of "sudden peril" (sometimes called the emergency doctrine) and unavoidable accident. The court further advised the jury that contributory negligence was not a bar to recovery by appellant, but that under the comparative negligence doctrine (applicable to maritime torts), his contributory negligence, if any, would only reduce the amount of his recovery, if any, by the proportion in which his own negligence contributed to cause his injury.

■ Appellant assigns error to the giving of several instructions, submitting to the jury the defense theories of contributory negligence, sudden peril, and unavoidable accident. He does not contend that any of these instructions are erroneous in form or substance, but merely that they should not have been given because the record is devoid of evidence to support them. These assignments are not well taken. However, we wish to point out that, under these assignments of error, we are not called upon to decide whether this is a common law or an admiralty action with regard to the applicability of the doctrine of contributory negligence. See *Wilkins v. Foss Launch & Tug Co.*, 20 Wn. (2d) 422, 147 P. (2d) 524 (1944).

■ Appellant testified that he was standing on the afterdeck of the vessel approximately three feet—"a step or two"—away from the open doors of the trunk cabin which offered shelter. He was "shooting the breeze" with others and did not see the unusual wave approaching until someone shouted. At that time the wave was immediately upon the vessel. We think that the jury was entitled to infer from the testimony that appellant had ample opportunity to observe the extraordinary wave, had he been attentive, but being oblivious to the obvious dangers of the sea surrounding him, preferred to "shoot the breeze." Whether his conduct in relation to his own safety under these circumstances was that of a reasonably prudent man, in our opinion, was a question of fact for the jury.

■ The jury could also have found that the wave was

only about one third of a block away from the vessel at the time respondent was able to recognize it as presenting a potential hazard. At that time, he commenced turning into it and accelerated the throttle in order to increase the speed of his turn, but was unable to completely turn into the wave in the time available—about seven seconds—so as to meet the wave head on. Under the circumstances, the jury was entitled to find that the wave created a "sudden peril," and that respondent acted in an emergency. For these same reasons, the jury could also have found that the injuries suffered by appellant resulted from an unavoidable accident.

■ Appellant also contends that the trial court erred in refusing to instruct the jury that respondent was negligent *as a matter of law*. This contention is based upon respondent's admitted failure to warn his passengers after recognizing that the wave presented a source of potential harm. It must be remembered that respondent had only about seven seconds to act after recognizing the possible danger, and at that time was busy in the wheelhouse manipulating the "Mardo" into the best possible position to meet the oncoming wave. We cannot say that respondent's failure to warn was, under these circumstances, negligence as a matter of law.

■ The question of liability or nonliability on the part of respondent toward appellant in this case was purely factual, depending in the main, on the recollection of witnesses as to time and distance and other circumstances regarding the approach of the large wave and respondent's opportunity to avoid it. The jury heard the evidence and resolved it in favor of respondent. We think that there was substantial evidence to warrant the giving of the instructions excepted to by appellant and that the trial court did not err in giving them.

Judgment affirmed.

WEAVER, C. J., HILL, ROSELLINI, and FOSTER, JJ., concur.