James W. WEDDLE and Robert LeRoy Oldfield, Plaintiffs,

v.

Melvin WEST and Jane Doe West, his wife, and Zane Rockey and Jane Doe Rockey, his wife, d/b/a Rockey Charters, Defendants.

No. 7894.

United States District Court
W. D. Washington,
Southern Division.

June 13, 1967.

Leon L. Wolfstone, Wolfstone, Panchot & Kleist, Seattle, Wash., for plaintiff.

Murray J. Anderson, Anderson & Bingham, Tacoma, Wash., for defendants West.

Nathan J. Heath, Gray, Fredrickson & Heath, Portland, Or., for defendants Rockey.

## MEMORANDUM DECISION

BOLDT, District Judge.

In September, 1965 plaintiffs, with a group of home-town friends interested in sport fishing and hunting, went on a fishing trip to Westport, Washington. The adjacent Pacific Ocean coastal waters are widely known for their runs of King and other species of salmon. Through defendants Rockey, who do business as "Rockey Charters," plaintiffs' group engaged defendants West and their fishing boat the LEE to take them fishing in the Westport area.

On September 8, 1965 plaintiffs and their companions went fishing on the LEE, defendant Melvin West acting as fishing guide and skipper of the vessel. On that excursion Oldfield became seasick and with a view of controlling his nausea and avoiding exhaust fumes, went to the bow of the boat and remained there throughout the day. This was Oldfield's first ocean voyage but Weddle had previously fished out of Westport and

on the LEE. The next day, September 9, 1965, the group went out on the LEE for further fishing. The weather was clear, the sea moderate and remained so throughout the day except for a single wave commonly referred to as a "sneaker" which caused the incident resulting in the injuries for which plaintiffs seek recovery in this action. On both days West cautioned Oldfield he probably would get wet if he remained in the bow of the LEE. No other warning was given plaintiffs except immediately before the incident in question.

Sneaker waves are caused by current movements pushing surface waters in a peculiar manner leaving the back of the wave vertical. They suddenly arise without any known or observable pre-existing conditions and dissipate rapidly. They are observed infrequently—two or three times a season—and rarely strike a boat. A vessel meeting and passing over or through such a wave will drop after passing the crest. The effect upon persons in the boat is as though the deck had dropped from beneath their feet.

Just prior to the incident in question the skipper of the LEE saw a sneaker wave approaching the bow of the vessel a short distance away. He immediately shouted a warning, "Hang on." This warning was heard by the witness Peters, a friend and fishing companion of plaintiffs. He looked up, saw the wave approaching and relayed the warning to other passengers in the boat. Other than plaintiffs, no passenger was injured, although every one of them experienced substantially the same shock from the drop of the boat after passing the crest of the sneaker wave.

Since the final argument of counsel was presented about three weeks ago, the court has extensively reviewed significant phases of the testimony, the transcript of the argument, the briefs of counsel and the authorities cited therein.[1]

In the final pretrial order entered in the case, plaintiffs contend defendants were negligent in the navigation and operation of the LEE in two particulars: in failing to adjust the speed and direction of the vessel to meet prevailing and reasonably foreseeable conditions of the sea; and in failing to anticipate and adjust speed and direction to meet the particular wave encountered by the LEE at the time of the incident in question. Plaintiffs also contend defendants were negligent in causing or permitting plaintiffs to be in positions on the vessel where they were at the time of the incident in question; in failing to cause plaintiffs to go within the vessel or to the stern; and in failing to warn plaintiffs of the risks of injury.

Defendants deny fault or negligence on their part in any particular proximately causing or contributing to plaintiffs' injuries, allege contributory negligence on the part of plaintiffs and claim limitation of liability pursuant to 46 U.S.C.A. § 183 et seq.

As was affirmed by all counsel during argument, no party contends negligence or contributory negligence has been either established or negatived as a matter of law. Thus, counsel have agreed and the court considers all issues as to negligence and contributory negligence ultimately fact questions both as to the particular circumstances which have been

1. Kermarec v. Compagnie Generale, Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 175 (1959)

The "City of Panama," 101 U.S. 453, 25 L.Ed. 1061 (1879)

Washburn v. Ensley, 53 Wash.2d 570, 335 P.2d 471 (1959)

Kvart v. Swedish American Line, 126 F. 2d 279 (2nd Cir. 1942)

Pacific S.S. Co. v. Holt, 77 F.2d 192 (9th Cir. 1935)

Moore v. American Scantic Line, Inc., 121 F.2d 767 (2nd Cir. 1941)

The Great Northern, 251 F. 826 (9th Cir. 1918)

The Vueltabajo, 163 F. 594 (D.C.Ala. 1908)

International Mercantile Marine Co. v. Smith, 145 F. 891 (3rd Cir. 1906)

Scheiner v. St. Jovite, 180 F.Supp. 452 (D.C.Calif.1960)

Ludena v. The Santa Luisa, 112 F.Supp. 401 (D.C.N.Y.1953)

Ludwig v. United States, 74 F.Supp. 29, 30 (D.C.Wash.1948), Bowen, J.

shown by the evidence and the reasonable inferences to be drawn therefrom.

■ The applicable standard of care chargeable to operators of vessels carrying passengers for hire is stated in Moore v. American Scantic Line, 121 F.2d 767 (2nd Cir. 1941) at page 768:

" * * * A passenger is entitled to have a carrier exercise for his safety as much skill, care, and prudence as an exceedingly competent and cautious man would bring to the task in like circumstances and is liable for injuries to passengers due solely from a failure to do that."

After full and careful consideration, the finding of the court as to each fact issue necessary for decision will now be stated. Extended or detailed dissertation does not appear necessary or desirable and for the most part the court's final and ultimate determination of the controlling facts will be presented.

■■ The court finds and holds there was no joint venture or other form of agency relationship between defendants Rockey and defendants West requiring or authorizing the imputation to defendants Rockey of the alleged negligence of defendants West. Defendants Rockey were engaged in the business of arranging fishing boat charters with the owners of such boats for fishermen contacting Rockey Charters for that purpose. Defendants Rockey had granted and vested in defendants West, without reservation or qualification as to the use, management or control of the boat, the beneficial ownership, possession and use of the LEE, and this status was in effect at all times pertinent to the present case. This finding precludes statutory limitation of liability as to defendants Rockey.[2] If chargeable with negligence proximately causing or contributing to plaintiffs'

injuries, defendants West cannot be granted limitation of liability.

■ On the evidence, considered as a whole, it is the finding of the court that plaintiffs have not proved by a preponderance of the evidence that defendants or either of them were at fault or negligent in the navigation and operation of the LEE in any particular whatever and no causal relationship of any such alleged negligence to plaintiffs' injuries has been shown. The evidence the court finds credible and acceptable preponderates against any finding of navigational fault or negligence on the part of defendants.

Considering all of the facts shown by the evidence pertaining to the use and operation of sport fishing boats, including the LEE, in the Westport area, and the specific circumstances and conditions pertaining to the particular fishing trip in question, the court finds and holds neither defendants Rockey nor defendants West were negligent in any respect asserted by plaintiffs in the pretrial order concerning warning to plaintiffs or as to their position in the vessel.

The court further finds and holds that if in any particular of navigation or operation of the vessel or as to warning plaintiffs or their position in the vessel defendants or either of them failed in the skill, care and prudence an exceedingly competent and cautious man could bring to the task of operation of the LEE and in protection of its passengers, no causal relationship between any such negligence and the injury of either plaintiff has been shown by a preponderance of the evidence. In my opinion, this finding is supported by a preponderance of the credible evidence.

As plaintiffs' counsel conceded in the argument, there is no direct or circum-

**2.** 46 U.S.C. §§ 183–186, R.S. §§ 4283–4286
American Car & Foundry Co. v. Brassert, 289 U.S. 261, 53 S.Ct. 618, 77 L.Ed. 1162 (1933)
The Great Western, 118 U.S. 520, 6 S.Ct. 1172, 30 L.Ed. 156 (1886)

Moore-McCormack Lines, Inc. v. Russak, 266 F.2d 573 (9th Cir. 1959)
The Denali, 105 F.2d 413 (9th Cir. 1939)
McGill v. Michigan S.S. Co., 144 F. 788 (9th Cir. 1906) cert. den. 203 U.S. 593, 27 S.Ct. 782, 51 L.Ed. 332 (1906)

stantial evidence, at least there is none acceptable to this court, showing that the drop or fall of the LEE from the crest of the extraordinary wave that struck it was significantly greater or less, or that it caused more or less dislodgement of persons, in any portion of the vessel from stem to stern. As far as the evidence discloses every passenger on the LEE, whether located in the bow, in the stern, or elsewhere, was subjected to the same sudden drop or fall of the vessel and each passenger was subjected to the same force and conditions as those encountered by Weddle and Oldfield. At no time did "green water" come into the boat at the bow, stern, or midship. From the evidence it is purely a matter of speculation whether either Weddle or Oldfield would have fared any better from the effect of the wave encountering the LEE had they been in some part of the ship other than where they actually were located at the time. It can readily be imagined that each of the plaintiffs might have suffered greater injury, or even death, had he been located other than where he was at the time the "sneaker" wave struck.

Plaintiffs' counsel vigorously urged in argument that a general warning to passengers concerning the possibility of encountering an extraordinary wave, if given at the start of the voyage or some time before a particular extraordinary wave was encountered, would be a greater protection to passengers than a specific warning given immediately upon approach of an extraordinary wave. Whatever value a general earlier warning might have had, in the opinion of the court it would not have had nearly as much value for the protection of passengers, including the plaintiffs, as a specific warning at the time the wave approached. Such a warning in fact was given. It was heard by the witness Peters who was situated less, at least not more, favorably than plaintiffs to hear and heed the warning. Peters heard the warning, saw the wave approaching, turned and gave the warning to other passengers in the vessel before the boat met the wave. The specific and immediate warn-

ing by the skipper of an individual wave as it approached the LEE is persuasive evidence that defendant Melvin West was highly competent and constantly exercising utmost caution for the safety of his passengers, especially in so far as the single immediate cause of plaintiffs' injuries is concerned.

Plaintiffs' counsel concedes, as in the opinion of the court must be conceded, the only essential feature of any warning, either earlier or at the time of the wave's approach, was to "hang on." No passenger wherever located in the boat could do anything more than that to protect himself from the effect of the wave, unless it would be to turn in the direction of the wave's approach. In that connection it is undisputed that Oldfield was hanging onto the railing at the bow prior to and at the time of the approach of the wave. He was a husky and vigorous young man of some experience in athletics and in the vicissitudes of hunting and fishing. It is clear Oldfield, had he chosen to do so, might have turned and faced the wave before it struck as did Peters. However, under all the circumstances it cannot reasonably be inferred or found that Oldfield would have fared any better or worse had he been facing forward rather than aft as the wave was encountered by the LEE.

The court finds entirely credible the testimony of West that Weddle was in some position below and out of sight of West from his position on the bridge of the LEE. Weddle was acquainted with the waters of the Westport fishing area and with the LEE in which he had fished before. Wherever Weddle was in the boat he was in at least as good a position as Peters to hear West's warning of the approach of the wave and to take such precautions for his safety as time and the circumstances would permit. Here again, whether Weddle would have escaped injury or suffered greater harm if he had been somewhere else on the vessel is purely a matter of speculation.

Under the existing circumstances plaintiffs' contention that the MODOC

should have radioed a wave warning to the LEE is entirely without merit in fact or law.

The findings and conclusions stated require dismissal of the action as to both plaintiffs on the merits, with prejudice and costs to defendants. At the convenience of counsel findings of fact, conclusions of law and judgment in accordance with this decision may be presented for signature and entry.