PENNSYLVANIA CO. v. CLARK (two cases).

(Circuit Court of Appeals, Sixth Circuit. June 8, 1920.)

Nos. 3369, 3370.

1. **Carriers ⬤⟳316(5)—Proof of collision of train with boulder makes prima facie case.**
   Proof of collision of a train with a boulder, and injury to a passenger resulting from derailment, makes out a prima facie case.

2. **Trial ⬤⟳420—Introduction of evidence waives motion for directed verdict.**
   Where defendant introduced evidence after its motion for directed verdict was overruled, the same was waived.

3. **Pleading ⬤⟳237(6)—Amendment should be allowed to conform pleading to proof.**
   In an action for injuries suffered by a passenger when the train struck or was struck by a boulder, variance between averment that the train struck the boulder and proof the boulder fell from the embankment and struck the train could be cured by trial amendment, which should be allowed.

4. **Carriers ⬤⟳320(12)—Evidence of carrier's negligence sufficient to go to jury, regardless of presumption.**
   Regardless of the doctrine of res ipsa loquitur, evidence of a carrier's negligence in failing to frequently inspect an embankment *held* sufficient to go to the jury in an action for injuries sustained by a passenger when the train struck a boulder, which fell from the embankment close to the tracks.

5. **Carriers ⬤⟳316(1)—Carrier has burden to show its freedom from negligence.**
   The happening of an injurious accident is in passenger cases prima facie evidence of negligence on the part of the carrier, and, the passenger being in the exercise of due care, the burden rests on the carrier to show its whole duty was performed and that the injury was unavoidable by human foresight.

6. **Carriers ⬤⟳314(7)—Complaint held to generally charge negligence as the proximate cause of accident to train.**
   A complaint for injuries to a passenger on a train which struck a boulder, alleging that the injuries were caused by negligence in permitting the train to be wrecked and in permitting the boulder to be on the track, charges general negligence in causing or permitting the accident, so that

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the doctrine of res ipsa loquitur was applicable, despite the contention that the doctrine is not applicable where specific negligence is charged alone.

**7. Appeal and error ⬅=171(3)—Failure to allege derailment as causing passenger's injury not important, in view of proof and charge.**

In an action for injuries to a passenger on a train striking a boulder, it is not of controlling importance that the complaint did not allege a derailment, so as to invoke the doctrine of res ipsa loquitur applied in the case, where defendant presented proof of such derailment, and the court in its charge, without objection or protest, treated the action as one for derailment.

**8. Appeal and error ⬅=231(3)—Mere objection does not preserve contention that evidence is too remote.**

A mere "I object" does not suggest that evidence of damages was remote and purely speculative, and furnishes no ground for complaint in the appellate court on that ground.

**9. Carriers ⬅=320(1)—Negligence in failing to inspect embankment from which boulder fell and excessive speed held for the jury.**

In an action for injuries sustained by a passenger when the train struck a boulder, the question of the carrier's negligence in failing more frequently to inspect the embankment whence the boulder fell, as well as the question of excessive speed of the train, *held* for the jury, so that a requested instruction that there was no evidence of negligence in construction or operation of train or track, etc., was properly refused.

**10. Trial ⬅=260(8)—Requested instruction properly refused, being covered by those given.**

Where the jury were told the defendant carrier was not an insurer, that unless negligent it was not liable, and that it was not liable for pure accident, the refusal of a requested instruction that defendant was not liable unless negligent, etc., was proper, it being covered.

**11. Damages ⬅=216(7)—Instructions held not to allow speculative damages.**

In an action for personal injuries, an instruction that plaintiff could recover for pain and suffering sustained, and such as the evidence without conjecture shows she will sustain in future, was not objectionable, as allowing the jury to enter the broad field of speculation.

**12. Carriers ⬅=321(3)—Instruction that carrier is responsible for failure to use extraordinary skill, correct.**

An instruction that a carrier is liable as to passengers to observe the utmost caution characteristic of very prudent men, and is responsible for injuries which might have been avoided by extraordinary vigilance aided by the highest skill, is correct, being a proper statement of the carrier's liability.

**13. Appeal and error ⬅=274(5)—Exception held not sufficient to present contention that instruction should have been limited.**

An exception to a charge on liability of a carrier, "that the defendant company as a common carrier owed the highest possible degree of care and vigilance," did not call to the court's attention the claim that the instruction should have been limited to the care consistent with the operation of the business, and so the objection is not available in the appellate court.

In Error to the District Court of the United States for the Northern District of Ohio; D. C. Westenhaver, Judge.

Actions by Blanche Clark and by Herbert T. Clark against the Pennsylvania Company. There were judgments for the plaintiffs, and defendant in each case brings error. Affirmed.

⬅=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Union C. De Ford, of Youngstown, Ohio (Harrington, De Ford, Heim & Huxley, of Youngstown, Ohio, on the brief), for plaintiff in error.

D. F. Anderson, of Youngstown, Ohio, for defendants in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Mrs. Clark, while a passenger for hire on the Pennsylvania Company's train, was injured by the collision of the engine with a large boulder which had become detached from a high embankment closely adjoining the track and had fallen upon or close to the track, thereby causing the derailment of the greater part of the train. She sued to recover damages for her personal injuries. Her husband also sued for loss of services and expenses incurred and paid by him on account of the injury to his wife. The suits were consolidated and tried together, and there was verdict and judgment in favor of each plaintiff. The writs are to review the respective judgments.

The petition in each case alleges that on the date of the collision defendant "caused and permitted a certain large boulder to become dislodged from the side of its railroad embankment, and permitted the same to fall and remain upon its said track, and that no proper inspections were had or obtained by defendant in order to discover and remove said obstruction, all of which defendant well knew, or in the exercise of the highest degree of practicable care ought to have known"; further, that when defendant's passenger train, on which Mrs. Clark was a bona fide passenger, was passing "along said line" at a place stated, "defendant then and there permitted said train to come into a violent head-on collision with said obstruction upon said track, bringing said train to such a sudden stop that this plaintiff was thrown" etc., thereby suffering certain described injuries. The petition further avers that the injuries were the direct and proximate result of defendant's gross negligence and carelessness (1) in causing and permitting the train to be wrecked; (2) in causing and permitting the boulder to be and remain upon the track; (3) in failing and neglecting to remove the obstruction from the track; (4) in failing and neglecting to make proper inspection of its track and roadbed to discover the obstruction thereupon. The answer in each case admitted that the train upon which Mrs. Clark was riding "came into contact with an obstruction upon the track," but denied that the obstruction was caused in the manner alleged.

[1, 2] Upon the trial a prima facie case for plaintiffs was presented by way of proving the collision of the train with the boulder and the damages suffered by the respective plaintiffs. Mrs. Clark's freedom from negligence is beyond dispute. At the conclusion of the plaintiffs' testimony the defendant moved for direction of verdict in its favor. The motion was overruled. Defendant then presented its testimony, thereby waiving that motion. At the close of all the testimony, defendant's motion for direction of verdict was renewed and overruled.

[3] 1. Defendant introduced testimony to the effect that while the

train was running at about 50 miles an hour the engine collided with the boulder, which had become dislodged from a high wall of slate and shale closely bordering the track. The witness said "it came from about 25 feet up from the embankment, a kind of slate let loose from the bottom." The boulder was estimated by one witness to be about 8 feet long, 4 feet in diameter, and 2 feet thick, and by another as a little larger. Its weight was estimated at from 2 or 3 tons up to 10 tons. After colliding with the boulder, the train is said to have run its length before coming to a stop. There was testimony that the boulder did not collide with the pilot, but with the front of the engine, tearing off its side at a distance of several feet from the ground, as well as the cab. Defendant's counsel argue from this that the boulder was not on the track at the time of the collision, but was in the act of falling from the embankment. If true, there was merely a question of variance between pleadings and proofs. No such question was raised on the trial, and had it been the court could and should have allowed whatever amendment of petition was necessary to meet the proofs. Pennsylvania Co. v. Whitney (C. C. A. 6) 169 Fed. 572, 577, 95 C. C. A. 70; Pennsylvania Co. v. Cole (C. C. A. 6) 214 Fed. 948, 950, 131 C. C. A. 244; Valentine v. Quackenbush (C. C. A. 9) 239 Fed. 832, 834. 152 C. C. A. 618. Defendant's plea is inconsistent with counsel's contention, and it was not plainly impossible for a boulder of the size stated to collide with the front and side of the engine, even had it reached the ground before it was struck.

[4] The basis of the contention that verdict should have been directed for defendant is that there was no evidence of defendant's negligence. Wholly apart from the doctrine of res ipsa loquitur, hereafter referred to, we think defendant's testimony presented a question for the jury whether defendant discharged its full duty in guarding against accidents such as this. It appeared from the testimony of the section foreman that the embankment was close to the track, was more than 100 feet high, was in considerable part composed of slate and shale rock, always liable to fall, especially in freezing and thawing weather, and requiring actual testings of the face of the rock from time to time by a man let down with ropes, "to find what is loose and report it to the supervisor; he tells me to go ahead, and tells me to take it down"; that such testings had not been made for about two months before the accident, although there had been freezing and thawing weather, which "is a great deal more dangerous than in open weather. It demanded very frequent examinations. I could make an examination to-day, and in a day or so after that, if we had freezing and thawing weather, pieces might fall." While the foreman thought he had made an "examination" a week before the accident, he had no record even of that. The kind of examination did not appear, nor whether it was more than an ocular view from the ground, in the course of the usual track work, nor whether sufficient to disclose whether or not the rock was loosening. The motion to direct verdict was thus properly overruled, apart from the question of negligence in the construction and care of track and the operation of the train.

[5] But we think defendant's motion properly denied for another reason: As said in Gleeson v. Virginia Midland R. Co., 140 U. S. 435, 443, 11 Sup. Ct. 859, 862 (35 L. Ed. 458):

It is the "settled law in this court that the happening of an injurious accident is in passenger cases prima facie evidence of negligence on the part of the carrier, and that (the passenger being himself in the exercise of due care) the burden then rests upon the carrier to show that its whole duty was performed, and that the injury was unavoidable by human foresight." [1]

[6] Counsel concede that an allegation of the derailment of the train, without averments of negligence as a proximate cause of the resulting injuries, "clearly would have stated a prima facie case against the defendant below requiring it to produce evidence as to the causes in explanation of the accident." It is contended, however, that plaintiff did not allege the derailment of the train, nor plead general negligence in causing or permitting the accident, but merely pleaded specific acts of negligence on the part of the carrier, and therefore that the doctrine of res ipsa loquitur does not apply.

Assuming that counsel's construction of the petition is correct, his conclusion is supported by a number of authorities, including Midland Valley Ry. Co. v. Conner (C. C. A. 8) 217 Fed. 956, 133 C. C. A. 628, White v. Chicago G. W. R. R. Co. (C. C. A. 8) 246 Fed. 427, 158 C. C. A. 491, and The Great Northern (C. C. A. 9) 251 Fed. 826, 829, 163 C. C. A. 660. In fact neither Railway Co. v. Conner, supra, nor White v. Railway Co., supra, was a passenger case; and in The Great Northern, supra, the accident was caused by the plaintiff's slipping upon the bathroom floor, the sides of which sloped toward the center for the purpose of drainage. But assuming, for present purposes at least, that these cases were rightly decided, they do not help defendant, for we think the petition, fairly construed, includes a charge of general negligence, at least in permitting collision between the train and the boulder. Indeed, it might fairly be said that the charges of negligence are all general, being of two classes: (1) Permitting the train to be wrecked; and (2) permitting the boulder to be on the track. Certainly the first charge of negligence, "in causing and permitting said train to be wrecked as aforesaid," is as general as a pleading well could be, and charges no negligence in permitting the rock to be on the track. The words "as aforesaid" relate to the allegation in the same paragraph that—

"When said passenger train had reached and was passing along said line at a place near said Bellevue, defendant then and there permitted said train to come into violent head-on collision with said obstruction upon said track, bringing said train to such a sudden stop that this plaintiff was thrown," etc.

[7] Again, it is not of controlling importance that this petition does not in terms allege a derailment. Defendant presented proof of it, and the court, without objection or protest from defendant, in its charge treated the action as one for derailment. The collision was the

---

[1] For a full discussion of this subject see Lee Line Steamers v. Robinson (C. C. A. 6) 218 Fed. 559, 562, et seq., 134 C. C. A. 287, L. R. A. 1916C, 358.

substantial and important thing, and was admitted by plea; the partial derailment was only incidental.

We have no occasion to determine whether or not the rule that in passenger cases negligence is presumed from the mere fact of accident applies, where specific negligence alone is pleaded; for we think the better rule, sustained by the greater weight of authority, supports the application of the rule of presumption under the pleadings here. That even an unsuccessful attempt by a plaintiff to prove by direct evidence the precise cause of the accident (plaintiffs here made no such attempt) does not estop him from relying upon the inference of negligence from the accident itself, see Cassady v. Old Colony St. Ry. Co., 184 Mass. 156, 162, 68 N. E. 10, 63 L. R. A. 285; Chicago City Ry. Co. v. Carroll, 206 Ill. 318, 324, 68 N. E. 1087; No. Chicago St. Ry. Co. v. Cotton, 140 Ill. 486, 495, 29 N. E. 899; Walters v. Seattle, etc., Ry. Co., 48 Wash. 233, 236, 93 Pac. 419, 24 L. R. A. (N. S.) 788. And see note to Walters v. Seattle, etc., Ry. Co., supra, 24 L. R. A. (N. S.) 788 et seq.; also Thompson on Negligence, § 7643.

[8] 2. The criticism upon the admission of evidence regarding the effect of Mrs. Clark's injuries upon normal child delivery cannot be considered, for the reason that the ground of the objection was not stated. A mere "I object" did not necessarily suggest that the proposed testimony was remote and purely speculative. Robinson v. Van Hooser (C. C. A. 6) 196 Fed. 620, 624, 116 C. C. A. 294; Shea v. United States (C. C. A. 6) 251 Fed. 433, 436, 163 C. C. A. 451. For the same reason we cannot consider the objections made to the testimony of Mr. Clark regarding his expenditures by reason of his wife's injuries.

[9] 3. Defendant complains that two of its requests to charge, apparently the first and second, were not given. The first was to the effect that there is no evidence tending to prove that defendant was negligent in the construction or operation of its track, train, equipment, or appliances, and that the plaintiffs are thus not entitled to recover on any such ground of negligence. By the second verdict for defendant was instructed, unless it was found negligent in the construction, inspection, maintenance, or operation of its road, train, appliances, and equipment.

We think both these requests were properly refused. As to the first: In view of the testimony of the section foreman, we think it was a question for the jury whether due care was exercised in such a construction and location of the track with reference to the embankment as left it exposed to the constant hazard of falling rocks, and in the presence of such unstable material as this was. Moreover, the fireman testified that the train was running 50 miles an hour; that the engineer applied the emergency brakes from 3 to 5 seconds before the derailment. The jury had the right to conclude that the engineer saw the rock at the time the brakes were applied. While it was moonlight, the fireman testified that in shadow the headlight would illuminate 175 to 200 feet. The train's speed was such that even after the collision it ran, according to the fireman's estimate, about 300 feet, in addition to the several hundred feet it may well have run after the

emergency brakes were applied and before the collision. In our opinion there was a question for the jury whether due care was exercised in running in the nighttime, and at a season of the year and at a specific locality where there was unusual danger of falling rocks, with a train so equipped or so operated 'at such speed or otherwise that it could not be stopped within the distance within which obstructions could or should have been seen.

[10] The subject-matter of the second request was, we think, fairly covered by the charge of the court on its own motion. The jury was told that the defendant was not an insurer of the absolute safety of passengers, and that unless it was negligent in the performance of its duty it was not liable, nor would it be liable if the injury resulted from "what we call an act of God" or pure accident, unmixed with failure or neglect on defendant's part. Plaintiffs were charged with ultimate burden of proving negligence by a preponderance of the evidence. Sweeney v. Erving, 228 U. S. 233, 33 Sup. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905.

[11] 4. The charge upon the subject of damages is criticized as permitting "the jury to go beyond what is reasonably certain to be sustained in the future and to enter upon the broad field of pure speculation." We think this criticism devoid of merit. The jury was told, in the case of Mrs. Clark, that she could recover "for such pain and suffering, both mental and physical, which she has heretofore sustained, or which the evidence may show with reasonable certainty, and without mere conjecture, she will, by the greater probability, hereafter sustain, as * * * the direct and proximate result of such injuries." Similar language was used with reference to Mr. Clark's recovery. The charge on this subject was further elaborated, but we find nothing in it which, taking the charge as a whole, justifies the criticism referred to.

[12, 13] 5. The jury were told that "the carrier is liable as to passengers to observe the utmost caution characteristic of very careful and prudent men"; also that it was responsible for injuries received by a passenger "which might have been avoided or guarded against by the exercise upon the carrier's part of extraordinary vigilance, aided by the highest skill"; and again this due care was defined as "the highest possible degree of care, aided by the highest skill and performed with the utmost diligence upon its part and upon the part of its employés." This instruction was well within the authorities. In Gleeson v. Virginia Midland Ry. Co., supra, the formula used was "unavoidable by human foresight." In Pennsylvania Co. v. Roy, 102 U. S. 451, 456 (26 L. Ed. 141), the phrase employed was "injuries received by passengers in the course of their transportation, which might have been avoided or guarded against by the exercise upon his part [the carrier's] of extraordinary vigilance, aided by the highest skill." In Stokes v. Saltonstall, 13 Pet. 181, 191 (10 L. Ed. 115), the formula used was that, "so far as human care and foresight can go, he will transport them safely." This court has stated the rule to be "the exercise of the greatest and highest degree of care and caution approv-

ed by human knowledge and experience and consistent with the nature, extent, and operation of its business." Memphis St. Ry. Co. v. Bobo, 232 Fed. 708, 711, 146 C. C. A. 634. The charge in the instant case is especially criticized as omitting the words "and consistent with the nature, extent, and operation of its business," or words of similar import. It would have been entirely proper to include in the charge that limitation, and doubtless, had the attention of the trial judge been directed to that point, such limitation would have been expressed. Defendant, however, contented itself with an exception to the charge "that the defendant company as a common carrier owed the highest possible degree of care and vigilance toward the plaintiff in transporting her as a passenger." This did not call the trial court's attention to the absence of the limitation referred to. Illinois Central R. R. Co. v. Skaggs, 240 U. S. 66, 72, 36 Sup. Ct. 249, 60 L. Ed. 528; Denison v. McNorton (C. C. A. 6) 228 Fed. 401, 408, 142 C. C. A. 631. The instruction, so far as given, being within the approved authorities, the judgment should not be reversed, for the reason now advanced.

The judgments of the District Court are affirmed.