SOMMERVILLE, J.
Plaintiff, as the widow of Francis N. Pavey, brought this suit against the defendant company for loss and damage suffered by her by reason of the death of her husband, in the sum of $20,-000. She alleges that he was a crossing flagman in the employ of the company on July 1, 1913, when he was struck by some cars which were switched by the company *501 in its yards in the city of Shreveport on that day, and was killed almost instantly.
Defendant company answered, admitting the death of plaintiff’s husband at the time and in the manner indicated, but denying every material allegation of negligence on its part which was contained in the petition of plaintiff; and alleging that the death of the deceased was due to his having stepped directly in front of some approaching cars without making any effort to observe same, which was negligence on his part; and that that was the proximate cause of the accident.
There was judgment in favor of defendant, and plaintiff appealed.
There is no dispute of the statement of facts as made, as plaintiff put three members of the train crew of the defendant company on the witness stand, and relied entirely upon their testimony to make out her case. The balance of the train crew had been summoned by plaintiff and were in court, but were not used by her; and the defendant company did not put any witnesses on the stand, as they would doubtless only have corroborated the testimony of the preceding three witnesses for plaintiff.
The district judge in a very carefully prepared opinion discussed each one of the alleged acts of negligence on the part of the defendant company, and showed that plaintiff had failed to prove those allegations; and, by the evidence of her witnesses, he showed that the deceased was negligent-and at fault at the time of the fateful accident, and that it was his negligence which was the proximate cause of his death.
It appears from the evidence that the husband of plaintiff was a crossing flagman in the employ of defendant working at the McNeil street crossing in the city of Shreveport; and on the afternoon of July 1, 1913, while employed at that point, a switching crew were working there also with a string of cars backing down toward McNeil street. The engine foreman having cars to go on No. 3 track gave the signal to throw the No. 3 switch. There is some dispute as to whether he gave the signal to the deceased or merely gave the signal. It is undisputed that the deceased answered the signal and threw the switch, and it was shown that it was a common occurrence for the flagman to throw the switch, although it was no part of his duty as flagman. After throwing the No. 3 switch, he stepped back, head' down, and shari>ening a pencil, with his back toward the main line. Three ears came down track No. 3, and the balance of the eafs came down the main line about two car lengths behind the other three. A switchman, by the name of Prudhomme, had seen the cars coming down the main line, and when the rear end was about IS feet from Pavey, and fearing that the deceased was a little too near the main line, Prudhomme hollered: “Look out behind you, Pavey! Look out behind you!” The deceased after receiving this warning continued to step backward directly in front of the moving cars. Prudhomme grabbed at him, but too late to save him; he had one foot over the track and the front trucks passed over him before the train could be stopped, killing him almost instantly.
[1] It was the duty of the deceased as a stationary flagman to flag pedestrians and persons in vehicles about to cross McNeil street. That was his duty. It was also his duty to have been on the lookout for approaching trains so as to warn passers-by. The rules of the company were offered in evidence, and they showed that the rule defining his duty was intended for the protection of' pedestrians, and not for the protection of the employees of the company. Buies of a railroad company will be applied only in favor of those whom the rules were clearly intended to benefit and will not be extended to those not intended to be covered by them. Wolf v. N. O. Ry. & Lt. Co., 133 La. 891, 63 South. 392; Blanco v. N. O. Ry. & Lt. Co., 140 La. 694, 73 South. 774 *503 The deceased-at the time of the accident was not attending to his business, but had left the crossing and was some 14 feet away from it when he was struck. Had he been at his place at the crossing watching for ax>proacliing trains and giving warning to xmssers-by over the street, he would have seen the train which did the damage, and the accident would doubtless never have happened.
In the case of Lewis v. V. S. & P. Ry. Co., 114 La. 161, 38 South. 92, 108 Am. St. Rep. 335, it is said:
“The first question to be decided is, not whether the defendant failed to discharge a duty which it owed to the public (because, as the result proves, it had sufficiently acquitted itself of its obligation to the public by seeing that McNeil street and the track beyond to the eastward were clear, before the train was permitted to move in that territory), but whether it failed to discharge a duty that it owed to William Hart, one of its servants, whilst he was engaged in work for which he was employed, and the ordinary risks of which he assumed. And if this question be. decided in the affirmative, the remaining question is whether the failure of the master or the imprudence of the servant was the proximate cause of the accident.”
And it is further said in the Lewis Case, supra, that it is the duty of the employees working in and about the yards to ever be on the lookout for moving ears, and their “failure to observe that precaution must, under all the circumstances of the case, be regarded as the proximate cause of his death.”
• And as was further stated in the Lewis Case: '
“This danger, the instinct of self-preservation and the obligation resting upon every man to take thought for his own protection, considered, seemed exceedingly remote, and was one with respect to which, operating its train within the limits of its own yard, and considered with reference to its servant employed in that yard, we are of opinion that there was no failure of duty on the part of the defendant. A railroad yard, in which there is a roundhouse, turntable, main track, sidings, and switches, and where cars are sent to be cleaned and repaired, turned around, shifted and made up into trains is a-place in which a railroad company must necessarily be allowed greater latitude than is permitted upon the streets of a city or town, and we are not prepared to hold that in such a xilace the company must at all times and under all circumstances maintain a lookout upon the forward end of every car that is moved.”
[2] The evidence of plaintiff shows that the deceased left his position as crossing flagman to switch certain cars from one track to another. Instead of returning to the crossing, after having thrown the switch, he stood between the two tracks and continued to sharpen a pencil. He was standing with his back to the main line, facing the tracks with his left side in the direction from which the train and cars were coming. But being warned by a fellow workman that he was too close to the track, he stepped backward over across the rail of the main line, when the approaching cars were within three or four feet of him, and met his death. He had every opportunity to have seen these-cars moving on the main line, and he was charged with the knowledge that in all probability the cars would be moved, as just such an operation was performed from day to day to the knowledge of the deceased who had worked there some several months.
The negligence of the deceased in placing himself near the main line when he knew these cars would be operated, and in failing to protect himself and in stepping directly in front of the approaching car when it was-within three or four feet of him, was the proximate cause of the accident; and his-widow cannot recover damages therefor.
The judgment appealed from is affirmed.