**TEXAS AND PACIFIC RAILWAY COM-PANY, Appellant,**

v.

**Walter N. BUCKLES, Jr., and Silas R. Stanley, Appellees.**

No. 15585.

United States Court of Appeals
Fifth Circuit.

April 6, 1956.

Rehearing Denied April 23, 1956.

Writ of Certiorari Denied
June 11, 1956.
See 76 S.Ct. 1052.

Charles Egan, Shreveport, La., for appellant.

Simon Herold, L. L. Lockard, Shreveport, La., for appellees.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

RIVES, Circuit Judge.

Each appellee sued separately under the Federal Employers' Liability Act[1] for injury arising out of the same accident, and the actions were consolidated for trial. Both plaintiffs were members of a yard crew on a switch engine bound for the round house and temporarily stopped by a red light, at which time another switch engine attempted to couple onto the rear thereof. The plaintiffs' evidence, which the jury accepted, tended to prove that such coupling attempt was not one customarily made, that there was no prior warning of the impact, and that the speed of the second engine was excessive under the circumstances. The jury returned a verdict for Buckles in the amount of $26,400.00, and for Stanley in the amount of $32,800.00.

Appellant specifies some twenty claimed errors relating to various rulings of the district court upon the evidence, in refusing to declare a mistrial, in refusing special requested charges, in its general charge to the jury, and in denying the defendant's motion for a new trial.

■■ Specifications 1 and 2 relate to references to the children of the plaintiffs.[2] Ordinarily, testimony as to a

[1] 45 U.S.C.A. § 51 et seq.

[2] As abstracted from the briefs of the parties, such references were as follows: Stanley was interrogated as to the deductions from his salary for income tax when he had five children. After the accident, but before trial, his sixth child was born. At this point the judge ruled with Stanley, observing that income tax depends on the number of exemptions but did admonish the jury not to be governed by the fact of family and instructed them, in effect, to restrict this evidence to the determination of income tax.

In his opening statement, the attorney for Buckles referred to the children of his client and defendant moved for a mistrial on the basis of this reference.

In the course of the trial the wife of Stanley was asked by his attorney whether Stanley had any compelling reason why he should work in February. Her reply began, "A man with six children—" at which point defendant again moved for a mistrial.

In the course of the trial Buckles was asked if he had any children and replied "Three, sir." Defendant moved for a mistrial on the basis of this statement.

plaintiff's family is irrelevant.[3] In this case, however, prior to the trial, the defendant had filed its request for special instructions, among others the following:

"(i) A person's estimated future loss of earnings or diminished earning power reduced to present value in the manner set forth above must be further reduced by a reasonable deduction for income taxes which would have been paid upon the sum if received as a result of actual work."

That request was honored by the court in its instructions as folows: " * * * any award made by you to the plaintiffs is not subject to income tax liability or other deductions which would have been made had the plaintiffs continued at their regular employment, and you should take this into consideration."[4] The number of dependents, being implicit in the income tax problem, was thus made an issue by the defendant. The evidence of the plaintiffs' children was restricted by the court to the question of income tax, and on each occasion where children were referred to the jury was specifically instructed not to consider collateral issues nor the number of children for any other purpose. We should usually assume that the jury obeyed the instructions of the court. Pennsylvania Co. v. Roy, supra, 102 U. S. at page 459, 26 L.Ed. 141. In this case, that assumption is strengthened by the orderly manner in which the trial was conducted, and the absence of other evidences of appeals to prejudice or sympathy.

■ Specification 3 relates to the action of the trial court in permitting Dr. S. W. Boyce to testify as an expert witness, primarily for the plaintiff Buckles, over the objection of the defendant that the witness' name had not previously been furnished to counsel for the defendant. The court at first sustained that objection, stating:

"Our instructions to counsel, which were sent out a month or so in advance of the pre-trial conference last September, expressly required the names and addresses of all witnesses then known and expected to be used be given to the other side and also went on to say in the event new witnesses were learned of immediately, or promptly, they should notify the other side and to give them a short summary of the expected nature of their testimony.

"Under those circumstances, I see nothing to do but sustain the objection."

Counsel for the plaintiff Buckles then explained that he did not know that Dr. Boyce would testify until the preceding Friday when he examined Buckles. The court responded:

"I misunderstood. I had been under the impression you had known all along Dr. Boyce was going to be a witness and failed to notify Mr. Egan.

\* \* \* \* \* \*

"If you only had him examined last Friday, I think you are entitled to go ahead with him. I will withdraw the ruling and let him testify. I will caution you in the future that even if you do have a last minute examination like that be sure and tell the other side you are doing so immediately."

The district court, we think, was in better position than this Court to construe and apply its own rules of pre-trial practice, and we find no error nor abuse of discretion in this action of the court.

3. Pennsylvania Co. v. Roy, 102 U.S. 451, 460, 26 L.Ed. 141; Slattery v. Marra Bros., 2 Cir., 186 F.2d 134, 137.

4. We are not called upon to pass on whether the defendant was entitled to have the jury instructed as to income tax consequences of awards to the plaintiffs. The cases are reviewed in a recent district court opinion, Combs v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., D.C.N.D.Iowa, 135 F.Supp. 750.

Specification 4 is that the trial court erred in excluding the hospital record of Buckles. Appellant's insistence is that, under 28 U.S.C.A. 1732(a), that record was admissible because made in the regular course of the hospital's business.[5] In objecting, Buckles' counsel insisted that the real purpose of introducing the hospital record was to get before the jury the views of a doctor who had been asked to resign from the hospital staff, and who was not available for cross-examination. After examining the record, the court stated: "I will sustain it on the ground that the doctor is not here for cross-examination." The hospital record offered in evidence is not brought forward in the transcript of record on appeal, nor as an exhibit, and consequently we are not in position to say that the court erred in excluding the record, nor that any such error was "inconsistent with substantial justice." See Rule 61, Federal Rules of Civil Procedure, 28 U.S.C.A.

Specification 5 is that the trial court erred in refusing to give special charge 8 requested by defendant.[6] In the case relied on by appellant, Owens v. Union Pacific Railway Co., footnote 6, supra, the Supreme Court spoke of what remained of the defense of assumption risk prior to the 1939 amendment to the Federal Employers' Liability Act abolishing that defense, now 45 U.S.C.A. § 54. The accident in that case occurred before the enactment of that amendment, but suit was brought afterwards. By that amendment "every vestige of the doctrine of assumption of risk was obliterated from the law". Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 58, 63 S.Ct. 444, 446, 87 L.Ed. 610. Charge 8 was, therefore, properly refused.

Specification 6 is that the trial court erred in refusing to give special charge 9 requested by the defendant.[7] Appellant relies particularly upon an expression in the concurring opinion of Mr. Justice Frankfurter in Tiller v. Atlantic Coast Line R. Co., supra, 318 U.S. at page 71, 63 S.Ct. at page 453.

"By specific provisions in the Federal Employers' Liability Act, it has swept away 'assumption of risk' as a defense once negligence is established. But it has left undisturbed the other meaning of 'assumption of risk', namely, that an employee injured as a consequence of being exposed to a risk which the employer in the exercise of due care could not avoid is not entitled to recover, since the employer was not negligent."

If appellant's counsel had read the succeeding page of the concurring opinion,

---

5. There has been considerable discussion of the admissibility of hospital records as regular entries in the course of business. The authorities are collected in 5 Wigmore on Evidence, 3rd ed., § 1530(7), pp. 390, 391; and 6 Id., § 1707, pp. 36, 37.

6. The requested charge read:
"Where an employee of a common carrier by railroad operating in interstate commerce anticipates the risk resulting from the possible negligence of a fellow-employee, or should under the circumstances anticipate such risk, and decides to chance that particular risk, he cannot recover for an injury resulting from such negligence. Therefore, if you find that complainant anticipated, or should have anticipated, the impact resulting from the coupling attempt and knew, or should have known, of the risk inherent in such an attempt and chanced that risk, your

verdict must be for the defendant. Owens v. Union Pacific Railway Co., 319 U.S. 715 [63 S.Ct. 1271], 87 L.Ed. 1683."

7. The requested charge read:
"In the absence of negligence on the part of his employer, an employee of a railroad engaged in interstate commerce assumes the risk of injury by virtue of exposure to the ordinary dangers of his occupation. Therefore, if you conclude that complainant was injured as a result of a hazard inherent in, or incidental to, employment on a railroad and not as a result of defendant's negligence, your verdict should be for the defendant. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54 [63 S.Ct. 444, 87 L.Ed. 610]; Roberts v. United Fisheries [Vessels Co., 1 Cir.], 141 F.2d 288; Pavey v. Texas & Pacific Railway Co., 149 La. 500 [89 So. 634]."

he would have found the answer to his contention:

"'Assumption of risk' as a defense where there is negligence has been written out of the Act. But 'assumption of risk', in the sense that the employer is not liable for those risks which it could not avoid in the observance of its duty of care, has not been written out of the law. Because of its ambiguity the phrase 'assumption of risk' is a hazardous legal tool. As a means of instructing a jury, it is bound to create confusion. It should therefore be discarded." 318 U.S. at page 72, 63 S. Ct. at page 453.

■ Specification 7 is that the trial court erred in refusing to give special charge 14(c) requested by defendant.[8] Appellant relies upon the case of Thompson v. Camp, 6 Cir., 163 F.2d 396, 403, while the appellees insist that the record in this case is devoid of any proof to sustain the charge and that it is not a matter of which we can take judicial knowledge; especially, in view of the fact that the work expectancy of the plaintiffs was materially less than their life expectancy. They call attention also that the court carefully charged that work and life expectancy tables were not binding.[9] The parties had, in fact, stipulated as to the work expectancy and life expectancy of both men.[10] The common knowledge of the jury which they were given permission to use (see footnote 9, supra) embraces the knowledge that men in a hazardous occupation are sometimes killed. With deference to the opinion of the Sixth Circuit in Thompson v. Camp, supra, we think that the court did not err in this case in refusing special charge 14(c).

■■ Specifications 8, 9 and 11 are that the trial court erred in refusing to give special charges 14(d), (f) and (h) requested by defendant.[11] The appellant states merely, "The requested charges are practically self-evident statements and each should have been given on the authority of Thompson v. Camp, supra." We agree with the appellees that, " * * the jury under our system is considered as having ordinary sense and experience, and is thought as capable of taking into account the self-evident facts of life as anybody else."

■ Specification 10 is that the trial court erred in refusing to give special charge 14(g)[12] requested by defendant. No authority is cited for this novel concept. The charge, we think, was properly refused for the reason assigned to specifications 8, 9 and 11. Its implication that it is more blessed to be unable to work than to work is, to say the least, debatable.

8. "A person engaged in a hazardous occupation, such as that of complainant, is less likely to live to the age of life expectancy than a person engaged in a non-hazardous occupation."

9. "These life and work expectancy figures are not conclusive or binding upon you. Plaintiffs might die before their full expectancies have been reached, and, on the other hand, they might live longer than their expectancies. They might work for longer than would be indicated by the work expectancy figures, or for lesser periods of time."

10. "At this time, Your Honor, I believe Mr. Buckles and Mr. Stanley were the same age. We want to stipulate the work expectancy and life expectancy of these two men. We want to stipulate they both had a work expectancy as a railroader of 28 years and a life expectancy of 40 years."

11. "(d) Complainant, even if he had not been involved in the accident, which is the basis of this suit, and lived to life expectancy might not continue to meet defendant's requirements for continued employment in his particular job.

* * * * *

"(f) A person's earnings may diminish with the passing of the years.

* * * * *

"(h) The probability that the earnings of a person engaged in physical labor will diminish with increasing age."

12. "(g) Any award for loss of earnings would represent money received without effort—that is, it would be given to complainant without his having to work for the money."

Specifications 12, 14, 16 and 18 do not have enough merit, in our opinion, to warrant discussion. Specification 13 is that the trial judge erred in that portion of the charge relating to assumption of risk.[13] That part of the charge was clearly correct for the reasons stated in discussing specifications 5 and 6.

Specification 15 is that the trial judge erred in that portion of the charge relating to res ipsa loquitur.[14] It is not contended that the charge is a misstatement of law, but only that this is not a proper case for application of the doctrine of res ipsa loquitur. All of the crew on the forward engine were knocked about, one out of his seat, another from a sitting position over on his head on the floor. The engine standing still, with brakes on and weighing several hundred thousand pounds, was knocked several feet. There was other opinion evidence, such as "an unordinary jolt", "hardest one he ever got", "a heck of a crash", "It was the hardest blow that I have ever received." We think that there was ample evidence from which the jury was at liberty to find an unusual jolt or jar such, as ordinarily does not occur in the absence of someone's negligence.

Res ipsa loquitur as used in the charge, footnote 14, supra, and as applied in actions under the Federal Employers' Liability Act and other federal laws [15] means no more than a permissible inference of negligence from the occurrence itself. It is simply one type of circumstantial evidence. The use of the Latin for the more easily understood English translation, "the thing speaks for itself", has created an unnecessary air of mystery, and has been the source of much confusion in the courts. The ac-

13. This portion of the charge read:
"We now instruct you on the question of assumption of risk. In any suit brought against a railroad under this law to recover damages for injury to an employee, such employee does not assume any of the risks of his employment in any case where the injury resulted, in whole or in part, from the negligence of any of the agents or employees of the railroad."

14. This portion of the charge read in relevant part:
"In addition to their specific charges of negligence against defendant, plaintiffs are relying here upon the doctrine of res ipsa loquitur, which is a Latin term meaning that the thing or affair speaks for itself. Res ipsa loquitur means that the facts of the occurrence may warrant the inference of negligence; not that they compel such an inference; that they furnish evidence of negligence where direct evidence of it may be lacking; but it is evidence to be weighed, not necessarily to be accepted as sufficient, which may call for explanation or rebuttal; not necessarily that it require such explanation or rebuttal. When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the accident is such as in the ordinary course of things does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of explanation, that the injury arose from the defendant's want of care."

15. " * * * res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff." Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815.
See also, Jesionowski v. Boston & Maine R. Co., 329 U.S. 452, 457, 67 S. Ct. 401, 91 L.Ed. 416; Johnson v. United States, 333 U.S. 46, 49, 68 S.Ct. 391, 92 L.Ed. 468; Wilkerson v. McCarthy, 336 U.S. 53, 62, 69 S.Ct. 413, 93 L.Ed. 497; Cf. Geotechnical Corp. of Delaware v. Pure Oil Co., 5 Cir., 196 F.2d 199, 205; Whalen v. Phoenix Indemnity Co., 5 Cir., 220 F.2d 78, 82, note 4; Giacalone v. Raytheon Mfg. Co., 1 Cir., 222 F.2d 249, 252.

cident must be of the kind from which reasonable men may draw an inference of negligence. If fair-minded men may draw different inferences, then the question is for the jury.[16] Further, there must be evidence, either from the accident itself or from other testimony, reasonably pointing to the defendant as the one responsible for the negligence. In a case under the Federal Employers' Liability Act, the evidence must reasonably negative that the plaintiff's own negligence was the sole proximate cause of the accident, though it need not so negative ordinary contributory negligence on the part of the plaintiff since that goes only in diminution of damages, and the plaintiff may recover if his injury resulted "in whole or in part" from the negligence of the defendant. 45 U.S.C. A. §§ 51, 53.

It is true that it might be possible to glean all of the facts from the testimony of the members of the crews of the two engines. However, their testimony was conflicting and led to diametrically opposed conclusions, negligence or non-negligence, according to which crew the jury believed. Under such circumstances, is the jury deprived of the right to add to such direct but conflicting testimony its

reasonable inferences from the happening itself? We think not. If it *conclusively* appeared either that there was no extraordinary or unusual jolt or jar, or if the cause of the jolt or jar was *conclusively* established, then of course there would be no room for inference, but so long as either the unusual nature of the jolt or jar, or the cause thereof is in such dispute that reasonable men might arrive at different conclusions, the jury is entitled to consider also the happening itself and such inferences as might reasonably be drawn therefrom.[17] After all, here, as in the Jesionowski case, supra, 329 U.S. at page 457, 67 S.Ct. at page 404, the question is not whether this case fits neatly into some conceptualistic interpretation of res ipsa loquitur, but whether the circumstances were such as to justify the jury in finding an unusual jolt or jar and that the cause thereof was the defendant's negligence. We think that they were.

■■■ Specification 17 is that the Trial judge erred in that portion of the charge relating to future pain and suffering.[18] While the cases are not altogether in accord, we think that the weight of authority and the better reason support the charge.[19]

16. See Wilkerson v. McCarthy, 336 U.S. 53, 63, 69 S.Ct. 413, 93 L.Ed. 497; Lavender v. Kurn, 327 U.S. 645, 653, 66 S. Ct. 740, 90 L.Ed. 916.

17. Pennsylvania Co. v. Clark, 6 Cir., 266 F. 182, 187; Gray v. Baltimore & O. R. Co., 7 Cir., 24 F.2d 671, 673, 59 A.L.R. 461; Omaha Packing Co. v. Pittsburgh, F. W. & C. Ry. Co., 7 Cir., 120 F.2d 594, 599; Zumwalt v. Gardner, 8 Cir., 160 F. 2d 298, 302, 303; Prosser on Torts, pp. 306, 307; Annotation on "Evidence of specific negligence as affecting reliance on res ipsa loquitur", 33 A.L.R.2d 791.

18. The portion of the charge to which exception is taken read:
"While any award for future loss of earnings should be reduced as we have instructed you above, any award made by you for future pain and suffering, if any, is not subject to any such reduction."

19. See Chicago & Northwestern Ry. Co. v. Candler, 8 Cir., 283 F. 881, 884, 885, 28 A.L.R. 1174, concluding as follows: "Neither the plaintiff in the case nor any one else in the world has ever established a standard of value for these ills. The only proof ever received to guide the jury in determining the amount of the allowance they should make is, broadly stated, the nature and extent of the injury, its effect and results. They are instructed to allow a reasonable sum as compensation, and in determining what is reasonable under the evidence to be guided by their observation, experience and sense of fairness and right. At the best the allowance is an estimated sum determined by the intelligence and conscience of the jury, and we are convinced that a jury would be much more likely to return a just verdict, considering the estimated life as one single period, than if it should attempt to reach a verdict by dividing the life into yearly

Specifications 19 and 20 are aimed at the action of the district court in denying the defendants' motion for new trial, mainly on the ground that the verdicts were excessive. Without recounting the evidence at length, it is sufficient to say that we find no abuse of discretion and that the action of the trial court in denying the motion for new trial is "not without support in the record". Neese v. Southern Ry. Co., 350 U. S. 77, 76 S.Ct. 131, 132; Whiteman v. Pitrie, 5 Cir., 220 F.2d 914.

The judgment is therefore

Affirmed.

CAMERON, Circuit Judge (dissenting).

The verdicts rendered in these cases were inordinately large, but it is probable that I would not file a dissent if I did not feel that a vital mistake had been made in applying the doctrine *res ipsa loquitur*. In my opinion, this salutary rule was never intended to take sides in a swearing match such as we have here so as to assist one litigant and prejudice the other.

"It is, after all, a 'rule of necessity to be invoked only when necessary evidence is absent and not readily available.' "[1]

The same rule is stated in these words by 38 American Jurisprudence, Negligence, Sec. 303, p. 999:

"Limitations.—The doctrine of *res ipsa loquitur* has no application where all the facts and circumstances appear in evidence. Nothing is then left to inference and the necessity for the doctrine does not exist. Being a rule of necessity, it must be invoked only where evidence is absent and not readily available. It is not to be invoked when the evidence is available, and certainly not when it is actually presented. * * "

It is certain that no necessary evidence was absent here, but all of the evidence was available and was actually presented. Plaintiffs put on the stand all of the members of the crew of the forward engine, and also placed in evidence a number of photographs taken inside this engine. Each man testified what he was doing and what the others were doing, and they pointed out on the photographs the various mechanical devices by which such an engine was operated. All of these witnesses testified that the rear engine ran into the forward engine without receiving any signal and without warning and at an excessive rate of speed, about ten miles per hour. Plaintiffs proved that such an action was negligence and was the sole proximate cause of their injuries.

Plaintiffs further proved that Buckles was fireman, and Stanley was switchman on the forward engine, and that neither of them had any duty to perform in connection with the attempted coupling. Plaintiffs further showed that, as the result of the negligence thus established, they were thrown violently from their respective positions and were injured.

The crew of the rear engine, while admitting that the impact between the two was rather unusual, testified that it was not sufficient to cause injury to anyone. This crew further stated that it was customary at times to couple engines together for convenient movement and without giving any notice to the forward engine. All of them testified that the speed at which the rear engine was being operated was about four miles an

---

periods, setting down yearly estimates, and then reducing the estimates to their present value. The arbitrariness and artificiality of such a method is so apparent that to require a jury to apply it would, we think, be an absurdity."

See also, 25 C.J.S., Damages, § 185c, p. 885; 15 Am.Jur., Damages, § 74; Annotations 28 A.L.R. 1178; 77 A.L.R. 1451; 154 A.L.R. 801.

[1] Cooley, Torts (4 Ed.) Sec. 480, as quoted by Mr. Justice Frankfurter in his dissent in Johnson v. United States, 1948, 333 U.S. 46, 53, 68 S.Ct. 391, 395, 92 L.Ed. 468.

hour. In other words, the crew of the rear engine disputed all of the facts and charges of negligence established by the crew of the forward engine. Every material fact was placed before the jury by eyewitnesses and the jury was confronted with the duty of determining which set of witnesses it would believe.

What possible place, then, did a presumption of law of any description have in such a controversy? The majority opinion cites no case to support the giving of such an instruction, and none is called to our attention. Most cases in which the doctrine is applied give the instruction in the words of Sweeney v. Erving, 1913, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815: "In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; *that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, \* \*."* The key words of that statement are those which have by us been placed in italics. They furnish the *sine qua non* of the propriety of the instruction.

The case chiefly relied upon as justification for applying the doctrine here is Jesionowski v. Boston & Maine R. Co., 1947, 329 U.S. 452, 67 S.Ct. 401, 404, 91 L.Ed. 416. But that case is replete with acknowledgement that the doctrine applies only to "unusual happenings", to "unusual accidents", and the decision quotes the clause above emphasized, " 'where direct evidence of it may be lacking.' " That case, moreover, involved a *derailment*, which has always been a favorite field for the application of *res ipsa*. The rationale of the rule is well illustrated by the facts of that case. The Railroad claimed that the decedent negligently threw a switch while the lead car of a four-car movement was straddle the switch. If so, his negligence alone produced his death.

But there were circumstances which repudiated that theory. If decedent was not so negligent, what did cause the de-railment? Direct evidence was lacking. Any number of things, such as excessive speed, loose spikes, a broken rail, a defective switch spring, a faulty flange on a wheel might have been the cause. Derailments do not occur in the ordinary course of things. The very operation of railroads depends on an absence of derailments. When one does occur, it is highly unusual and it is difficult to make precise proof of negligence; doubly so where the only witness for the plaintiff has been killed. The situation here is the other extreme from that one.

This Court has correctly appraised and applied *res ipsa loquitur* in a series of decisions and consistency has been observed until the present case. In Chicago, R. I. & P. R. Co. v. McClanahan, 5 Cir., 1949, 173 F.2d 833, 837, we considered the doctrine from a historical point of view and delineated its nature and defined the kinds of cases where it would logically apply. Both the opinion of the Court and the concurring opinion illuminate the subject. We quoted from modern and ancient writing, and limited the doctrine to those situations where an accident does not happen if those who have the management control use proper care, such as instances where barrels of flour or pots have fallen from upper windows. " 'It is the duty of persons who keep barrels in a warehouse to take care that they do not roll out \* \* \*.' "

We amplified the discussion in Geotechnical Corp. v. Pure Oil Co., 5 Cir., 1952, 196 F.2d 199, and illustrated the rule's applicability by giving it sway as to one party to the litigation and denying it with respect to another. We carried the development of the doctrine further and along consistent lines in Whalen v. Phoenix Indemnity Co., 5 Cir., 1955, 220 F.2d 78, rehearing denied 5 Cir., 222 F.2d 121, where we applied the doctrine in a typical case. Two linoleum rugs, each weighing twenty-six pounds, fell over on the plaintiff while she was in a squatting position. Like the barrels in the warehouse, properly stacked or

placed linoleum rugs would not normally fall over where the clerks were required to work. It would have been extremely difficult for the plaintiff there to point to any specific act of negligence by any particular person as causing the rugs to fall. The owner of the store had it within his power to make full and complete proof on the subject. It was proper that *res ipsa loquitur* shift the burden on him to go forward with the proof.

In the present case it is not necessary to decide between the English rule, which treats the doctrine as one of substantive law, or the rule recognized by the Supreme Court of the United States, which contemplates only that the doctrine be used as shifting to the defendant the burden of going on with the evidence. Under any theory *res ipsa loquitur* had no place in this case. It is easy to visualize the effectiveness with which the instruction could be used in the jury room. A juror favorable to the plaintiff could confront the others with this sort of argument: "Here we have five credible witnesses swearing that the moving engine proceeded at a speed of ten miles per hour; five other credible witnesses testified that its speed was only four miles an hour. But the Court has told us that we are permitted to infer that the railroad was negligent from the mere fact that the accident happened."

By placing this inference in the scales on the side of plaintiffs, it was possible to resolve this conflict with strict fidelity both to the facts and to the law as given by the Court. It was not proper for the Court to place *res ipsa loquitur* in the scales on one side when all of the facts were fully developed. To do so was to cast the appellant under a prejudicial burden which the law does not sanction. Brady v. Southern R. Co., 1942, 222 N.C. 367, 23 S.E.2d 334, affirmed 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239. For the reasons stated, I think the judgments should be reversed and the cases remanded.

Rehearing denied: CAMERON, Circuit Judge, dissenting.